UNITED STATES of America, Appellee,

v.

Durvan ARBOLEDA, Defendant,

John Wenzel and Juan Gil as known as Pedro, as known as Peter and Hector DeJesus Areanas–Posada, Defendants–Appellants.

Nos. 276, 277 and 278, Dockets 93–1234, 93–1237 and 93–1239.

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1993.

Decided March 25, 1994.

Order Denying Rehearing June 10, 1994.

Fern H. Schwaber, Schwaber & Kafer, New York City, for defendant-appellant Hector DeJesus Areanas–Posada.

Lawrence A. Barocas, Barocas & Schmidt, P.C., New York City, on the brief of counsel for defendant–appellant Juan Gil.

Douglas Eaton, New York City (also on the above brief of counsel) for defendant-appellant John Wenzel.

Mark J. Stein, Asst. U.S. Atty., S.D.N.Y. (Mary Jo White, U.S. Atty., S.D.N.Y., Robert Khuzami, John W. Auchincloss II, Asst. U.S. Attys., S.D.N.Y., New York City, of counsel), for appellee U.S.

Before: NEWMAN, Chief Judge, CARDAMONE and GOODWIN * Circuit Judges.

CARDAMONE, Circuit Judge:

Defendants John Wenzel, Juan Gil and Hector Areanas–Posada (defendants or appellants), were convicted of conspiracy to launder money and of laundering money representing the proceeds of unlawful narcotics trafficking in violation of 18 U.S.C. §§ 371 and 1956, respectively, and also were convicted of engaging in transactions in money derived·from the proceeds of unlawful narcotics trafficking in violation of 18 U.S.C. § 1957, following a jury trial in the Southern District of New York (Griesa, C.J.). During the jury's deliberations it requested that a portion of·the prosecutor's rebuttal summation be read back. The trial judge granted this request, but refused a government request that it also instruct the jury that the prosecutor's rebuttal was not evidence. Shortly after the read-back, the jury returned the guilty verdicts against all three defendants.

This appeal from these judgments of conviction asks us to review the trial court's decision granting the jury's request for the read-back of the rebuttal summation which the jury had already heard earlier that same morning. Such request we think reflects at least some confusion in the jurors' minds as to the role a summation serves, and at least suggests that the jury might have believed the prosecutor's argument could substitute for the jury's recollection of the facts. It is well known that something repeated is more likely to be remembered than something which is not. The law of course permits the prosecution, because. of the burden of proof imposed on it, to have the last word. But last word does not. mean the last word repeated.

## BACKGROUND

The background of this case need be reviewed only briefly. It revolves around the relationship between Duvan Arboleda and Barry Slomovits. Arboleda was a major

* Hon. Alfred T. Goodwin, Senior Circuit Court Judge, United States Court of Appeals, Ninth Circuit, sitting by designation.

launderer of proceeds from narcotics trafficking, and was named as a defendant in the same indictment as appellants, but has fled to Columbia. For close to nine years, from 1983 to November 1991, he delivered large amounts of cash to Slomovits, a Manhattan gold merchant, who maintained an entire floor in a building located at 71 East 47th Street between Fifth and Sixth Avenues in New York City. During this nine-year period Slomovits was engaged in money laundering, handling nearly $50 million a year, on which he earned a commission of up to four or five percent.

Slomovits exchanged gold for cash he received from Arboleda at prices significantly above the market price for gold. Although no documentation was kept of these sales, Slomovits was thereby able to account in part for the huge amount of cash he took in. Through the use of wire transfers and checks to Swiss and South American banks, he was able to launder the enormous sums of cash Arboleda delivered to him. More sophisticated transactions to launder money were designed and arranged by Slomovits. These involved other gold merchants and facilitated Arboleda's receiving cash or checks instead of gold.

Appellants were charged with being three of the many couriers of Arboleda's cash—and in the case of Gil, checks as well—as all were employed by Arboleda. They were arrested on November 25, 1991 along with Slomovits and many others. On May 8, 1992 Slomovits pled guilty to a one-count superseding information charging him with money laundering in violation of 18 U.S.C. § 1956, and entered into a cooperation agreement with the government. He ended up as the prosecution's principal witness at defendants' trial. It was his testimony and that of undercover agents that implicated defendants in the money laundering scheme. In addition, the government admitted into evidence two photographs—Exhibits 65 and 66—allegedly showing defendant Areanas carrying boxes containing either gold or cash. Gil and Wenzel took the stand in their own defense and admitted to making deliveries of cash and gold. Each testified they believed the deliveries were part of an attempt by Arboleda to avoid paying income taxes. Areanas, who is Wenzel's brother-in-law, did not testify.

At the close of the testimony on October 15, 1992, after six days of trial, the prosecutor and defense counsel summed up. The next morning, the prosecutor gave his rebuttal summation. The trial judge then charged the jury—including giving the proper instruction regarding the purpose of summation—which retired to begin its deliberations. Several hours later, the jury sent a note to the trial judge stating: "We would like any testimony regarding Hector Areanas on October 8. Also rebuttal summation regarding Hector Areanas." Areanas' counsel immediately objected to the jury again hearing the prosecutor's rebuttal summation. Judge Griesa overruled her objection stating

I see absolutely no reason to deny the jury what they are requesting. They had a right to hear the rebuttal summation in the first place. If they want to hear it repeated, I will allow it without any question.

Obviously sensing the possibility of an impropriety, the prosecutor promptly requested a limiting instruction, asking the jury be instructed "that their own recollection is what they should rely on with respect to the evidence," to which Judge Griesa responded: "There is no need for that. I will simply remind them that this is rebuttal summation. I think that these are intelligent people and they know the difference."

The portion of the prosecutor's rebuttal summation pertaining to Areanas was then read back to the jury. During the readback—according to an affidavit of defendant Gil's counsel—some of the jurors took notes. Later, the jury sent out a second note regarding the photographs. It asked: "On Exhibits 65 and 66, please name the individuals in the photos as there is no notation on the photos." The trial judge correctly wrote back that: "The only testimony about the photos is Agent Chen's, and it is, the person in the photo is Hector Areanas." Less than an hour later, the jury returned its guilty verdicts.

After the jury was dismissed, two jurors approached Fern Schwaber, Esq., counsel for Areanas. Each handed her a note. Ms. Schwaber stated that another juror said she concurred in the notes. The two notes read as follows:

Dear Fern Schwaber:

Please note, had you testified against the photographs in Exhibits 65 and 66 that they in fact were *not* your client, I would have voted for a Not Guilty plea, but unfortunately this was not the case.

I did not believe they were photos of your client.

Juror # 3

\* \* \* \* \* \*

Dear Ms. Schwaber:

You really should be more careful with Exhibits 65 and 66—they didn't at all [look] like your client. I would have pleaded differently if you questioned them.

Juror # 9.

Defense counsel immediately moved for a mistrial. While acknowledging that this was "an unusual incident," Judge Griesa nonetheless denied the motion from the bench and, after a written motion had been submitted by defendants' counsel, he again denied the mistrial motion and also denied a motion for judgment of acquittal or a new trial.

The district court sentenced Wenzel and Gil to 78 months imprisonment followed by two years of supervised release on each count to be served concurrently and a $250 special assessment. Areanas was sentenced to 70 months imprisonment on each count to be served concurrently followed by two years of supervised release and a $150 special assessment. Final judgments against defendants were entered on March 29, 1993. This appeal followed.

## DISCUSSION

On appeal, several claims of error have been raised. Since we are directing a new trial, the only question that need be addressed is whether the trial court should have permitted that part of the prosecutor's rebuttal summation concerning Areanas to be read back to the jury.

▮ As an initial matter, as both sides acknowledge, there are no federal cases precisely on point. We have recognized, of course, that whether requested testimony should or should not be read back to a jury during its deliberations is a matter confided to a trial court's broad discretion in the conduct of a trial before it. *See United States v. Damsky,* 740 F.2d 134, 138 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984); *United States v. Pollak,* 474 F.2d 828, 832 (2d Cir.1973). While deciding whether or not to grant a jury's request to hear a summation or a portion thereof read back is discretionary, such discretion should be exercised sparingly.

▮ A summation is not evidence. It is simply an attorney's argument to the jury on the circumstances of the case. Its purpose is to explain to the jury how that party views the evidence the jury has seen and heard and to suggest to that body what significance or inference it should attach to or draw from the evidence under the relevant law charged by the trial court. *See United States v. Guanti,* 421 F.2d 792, 801 (2d Cir.), *cert. denied,* 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970). Under the Federal Rules of Criminal Procedure, the prosecutor opens the argument at the close of the evidence. The defense replies. And, "[t]he prosecution shall then be permitted to reply in rebuttal." Fed.R.Crim.P. 29.1. The reason for this order of summation, according to the Advisory Committee on Criminal Rules, is so that the defendant will know what the prosecution's arguments are before deciding whether and how to reply. *See* Fed.R.Crim.P. 29.1 advisory committee's note. Because the ultimate burden of persuasion beyond a reasonable doubt is on the prosecutor, it is given the last word to the jury through its rebuttal summation.

▮ Following summation in our federal system, the trial judge instructs the jury as to the law that applies in the case and the jury then begins deliberations. The jury's task of independently weighing the evidence and applying it to the law as instructed is a "critical stage of a criminal trial." *United States v. Ronder,* 639 F.2d 931, 934 (2d Cir. 1981). As the Supreme Court teaches, "the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." *Williams v. Florida,* 399 U.S.

**62**

78, 100, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970). When the deliberative process is interrupted by the jury's re-exposure to one party's view of the evidence and how it should be applied, its function is in some sense inevitably skewed, resulting in prejudice to the other party.

■ That is what happened here. Several hours into their deliberations, the jury in the case at hand asked for the prosecutor's rebuttal summation pertaining to Areanas. The district judge allowed the read-back which lasted 12 minutes. During this read-back several of the jurors allegedly took notes, which presumably they carried into the jury room for use during their deliberations. The potential prejudice suffered by Areanas as a result of the read-back may not readily be measured.

New York is one of the few states that has considered this issue. In *People v. Sullivan,* 160 A.D.2d 161, 163, 559 N.Y.S.2d 881 (1st Dept.1990), *appeal denied,* 77 N.Y.2d 911, 569 N.Y.S.2d 943, 572 N.E.2d 626 (1991), the trial judge allowed the prosecutor's summation to be read back to the jury with an admonishment that the statements of both defense counsel and the prosecutor were not evidence. The First Department reversed despite the cautionary instruction, and in doing so squarely addressed the fundamental problem of allowing the read-back of a summation. "By rereading only the prosecutor's summation, the court permitted the People an additional opportunity to present their arguments, and their view of the evidence, creating the potential for distracting the jurors from their own recollection of the facts and from the arguments of defense counsel." *Id.; cf. People v. Velasco,* 77 N.Y.2d 469, 474, 568 N.Y.S.2d 721, 570 N.E.2d 1070 (1991) (refusal of trial judge to allow read-back not an abuse of discretion); *People v. Sims,* 5 Cal.4th 405, 20 Cal.Rptr.2d 537, 853 P.2d 992, 1021 (Cal.1993) (same), *petition for cert. filed,* Jan. 10, 1994.

Further, while a curative instruction may mitigate the prejudice suffered by defendants from a read-back, in the instant case the read-back was not coupled with any sort of limiting or curative instruction. Still, we are reluctant to suggest that a curative instruction will always salvage an otherwise prejudicial read-back. In the just cited *People v. Sullivan,* the trial judge did give such an instruction and the Appellate Division nonetheless held it "did not eliminate the prejudice to defendant created by the re-reading of the prosecutor's summation." 160 A.D.2d at 164, 559 N.Y.S.2d 881. Here, the jury heard the 12–minute rebuttal twice on the same morning. The rebuttal carefully and thoroughly sought to refute the arguments made by Areanas' defense counsel in her closing argument.

Moreover, in the present case, the read-back was not, to paraphrase Shakespeare, like one of those tedious twice-told tales vexing to the dulled ears of a drowsy juror. *See* William Shakespeare, *The Life and Death of King John* act 3, sc. 4, 423 (Oxford Univ. Press ed. 1928). Instead, the jurors were so interested and alert that some of them took notes on what they were permitted to rehear. Apparently sensing that the jury might be according the rebuttal the status of evidence, the prosecutor promptly requested a curative instruction from the trial court. Allowing the jury to listen again to the prosecutor's rebuttal was obviously decisive to their deliberations. The last word so often is the decisive word, *see Bollenbach v. United States,* 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946), particularly under circumstances where it is repeated.

■ We are persuaded that the read-back of the prosecutor's rebuttal prejudiced Areanas. In most cases, permitting one side a read-back of a summation will exceed the bounds of a trial court's discretion. It would be the exceptional case where the circumstances of the read-back would entail only limited prejudice to either party; an example of such a case might be where the summation explains contentions regarding some complex financial transaction unfamiliar to lay jurors, in which event it would normally be appropriate to read the pertinent portions from both sides' summations. The instant case presents no such rare circumstance. Consequently, and because the taint spreads to the guilty verdicts against all three defendants, the judgments of conviction must be reversed.

## CONCLUSION

Accordingly, for the reasons stated, the judgments of conviction are reversed and a new trial granted to defendants.

ORDER

June 10, 1994

A petition for rehearing was filed by the government in this case on May 9, 1994 which specifically asked us to reconsider our decision to order a new trial for defendants Wenzel and Gil. We requested a reply from Wenzel and Gil by letter dated May 18, 1994 and received a joint brief which responded to the government's petition.

The government incorrectly presumes that the panel failed to conduct a harmless error analysis with respect to these two defendants. Although no specific objection to the readback was made by Wenzel and Gil, none was required because the trial court treated an objection by one attorney as an objection by all. Further, a portion of the readback that mentioned Wenzel and Gil was particularly prejudicial because it suggested that Areanas' counsel believed the evidence against them was overwhelming. In light of the extensive interaction between counsel for Areanas and Wenzel and Gil, the taint of the readback spread to all three defendants. In addition, although the proof of Wenzel's and Gil's guilt satisfied legal standards, it cannot be characterized as overwhelming. Thus, not as much prejudice needed to be shown to obtain a new trial, as would be the case were the proof of guilt otherwise.

The petition for rehearing is denied.