OPINION OF THE COURT
Alan D. Marrus, J.
During jury deliberations may the Trial Judge deny a jury’s request for readback of testimony? Under the law, a Judge *34 does have the discretion to refuse a readback request, and, under the circumstances of this case, it was proper to do so.
At the conclusion of a two-jury murder trial involving two defendants, the jury, in this case, commenced its deliberations at about 1:30 p.m. on December 11, 1995. At that time, lunch was served to them in the jury room. At 2:30 p.m., the jury sent out a note for readback of the complete testimony of the three main prosecution witnesses, Derrick Hill, Richard King, and Lisa Todd. After the court responded to a note from the other deliberating jury, readback of the testimony of these witnesses commenced at about 3:30 p.m. The readback lasted over three hours and was completed at about 6:40 p.m. Approximately 30 minutes later, at about 7:10 p.m., the court ordered the jury to cease deliberations while it was taken out for dinner and then sequestered for the night.
The jury returned to the courthouse and commenced deliberating again at about 10:00 a.m. the next morning. Shortly thereafter, at 10:40 a.m., the jury sent out two notes, requesting readback of the complete testimony of Richard King and a portion of the testimony of Derrick Hill. While the parties assembled to respond to these notes, the jury sent out a third note at 10:50 a.m., requesting a recharge on the definition of reasonable doubt. In formulating a response to these notes, the court told counsel and the defendant that it intended to respond as follows:
"Now, in response to these three notes, what I propose to do is to read back the portion of Derrick Hill’s testimony that they’ve asked for that counsel has agreed upon, and to recharge them on the definition of reasonable doubt.
"As far as the complete readback of Richard King’s testimony, as we all know, the jury heard that yesterday right before they were sequestered, and they’ve been back in the courthouse here less than and [sic] hour when they sent out these notes.
"It seems to me that before we reread the complete testimony of a witness that they just heard, that I should ask the jury to make an effort to try and narrow down what it is they would want to hear from his testimony, if that’s possible, and if not, then we will reread it, but to tell the jurors that since they already heard it, we’re not anxious to have something reread again if there’s any way we can avoid doing that, but to make — to assure them that if that’s what they really want to do, of course, we will do that.
*35 "Do the People have any objection to what I propose to do?
"mr. mueller: No, your Honor.
"the court: Does the defense?
"mr. santo: No, your Honor.”
The jury was then brought into the court and informed of the court’s response.
Following the one readback and recharge, the jury returned to the jury room and sent out a note about five minutes later, at 11:15 a.m., refining its readback request for Richard King’s testimony. Nevertheless, the jury’s new note called for a read-back of approximately three quarters of that witness’s account. The court, again with the consent of counsel, had the testimony read back again. The readback of this testimony was completed at about 12:40 p.m., when the jury was returned to the jury room for lunch.
At 2:10 p.m., the jury sent out a note that it was deadlocked. In response to this note, without objection by either side, the court gave the jury what is commonly referred to as an Allen instruction, directing the jury to continue its deliberations.
About 30 minutes after the jury resumed its deliberations, at 3:40 p.m., it sent another note requesting a readback of a portion of the testimony of a defense witness, Brenda Andrews. While the parties were assembling to respond to this note, the jury sent out a note to have readback of the same portions of Richard King’s testimony it had requested earlier as well as that of Lisa Todd, the witness whose testimony the jury had heard the day before.
In formulating a response to these notes, the following colloquy took place between the court and counsel:
"Now, in response to these notes, I propose to have that portion of Brenda Andrews’ testimony read back which the jury has requested, but as to the note regarding the readback of Richard King and Lisa Todd’s testimony, I propose to tell the jury that they’ve already had that read back to them and that we cannot just keep reading back the same thing over and over again to the jury, that that does not advance the deliberation process.
"Do the People have any objection to what I propose to do?
"mr. mueller: No, your Honor.
"the court: Does the defense?
"mr. santo: Yes, your Honor. I believe you should, on the second note, read back all the testimony they requested.
*36 "the court: My view is that they had that testimony read back and I think I have discretion where they’ve had it read back to tell them that they just can’t keep having the same thing read back over and over again.
"I don’t see any reason why we should have to read back the same thing over and over again, particularly when we’re talking about lengthy testimony. We spent three hours here yesterday having this testimony read back and then this morning much of it again was repeated again.
"We sat here for a half an hour while Mr. King’s testimony was read back where they sent out virtually an identical note, and at this point I don’t see why the Court should indulge the jury in going over it again.
"mr. santo: Well, If I may, just for the record Judge, today is the first time, as far as today is concerned, that they did ask for Lisa Todd’s testimony, and also it seems to be my guess is that they’re now using Todd’s testimony with respect to the prior testimony and Mr. King’s together, so the defense does maintain the objection and believes you should have it read to them at their request.
"the court: Okay. It’s my view that they’ve had it read back to them and there’s been no real meaningful deliberation. They’ve spent almost the whole time writing us notes for read-back and coming into court listening to readback, and then when I gave them the Allen charge they’ve only been deliberating in this case maybe a total of two hours since they got the case at all, and these notes asking for the testimony to be read back does not advance the deliberation process, particularly where the jury has sent out a hung jury note without having spent any meaningful time talking about the case, so that’s what I’m going to tell them, notwithstanding your objection, and let’s bring the jury out.”
The jury was then returned to the courtroom and instructed as follows:
"Now, in response to your notes, we will read back the testimony of Brenda Andrews that you requested.
"The note regarding the testimony of Richard King and Lisa Todd involves testimony that we’ve already read back to you and therefore we’re not going to read it back again. There’s a limit to how many times we can read back the same testimony over and over again. That does not advance the deliberation process.
"So please read back Brenda Andrews’ testimony.”
*37 Following the readback of Brenda Andrews’ testimony the jury returned to the jury room and deliberated for about two hours before sending out a note at 6:25 p.m. that it had reached a verdict. The jury returned to the courtroom and rendered its verdict, convicting defendant of all counts.
How a court responds to jury notes for information is governed by statute and case law. New York’s statute clearly vests the trial court with discretion in the manner in which jury requests for information are answered: "Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper.” (GPL 310.30.)
In response to inquiries by a jury during deliberations, it is clear the court has an obligation to "give meaningful supplemental instruction”. (People v Malloy, 55 NY2d 296, 301 [1982].) The Court of Appeals there emphasized that while the trial court does have discretion and that there is no per se rule in responding to juror inquiries, "factors to be evaluated are the form of the jury’s question, which may have to be clarified before it can be answered, the particular issue of which inquiry is made, the supplemental instruction actually given and the presence or absence of prejudice to the defendant” (supra, at 302).
The Malloy decision (supra) concerned a jury’s request for supplemental instructions, not readback of testimony. Yet the Malloy analysis has been applied to evaluate trial courts’ responses to readback notes by deliberating juries. In People v Arcarola (96 AD2d 1081 [2d Dept 1983]), the Appellate Division, citing Malloy, ruled that a trial court’s refusal to have read back the testimony of four witnesses was reversible error. Relying upon both Malloy and Arcarola (supra), the Appellate Division ruled in People v Andino (113 AD2d 944 [2d Dept 1985]) that a trial court’s refusal to have read back the testimony of four witnesses (the entire case) was reversible error.
In People v Carrero (140 AD2d 533 [2d Dept 1988]), the Appellate Division found no error in the trial court’s partial read-back of testimony requested by the jury, where, during a break in the readback, the jury sent out a note that it had reached a verdict. There the jurors were polled to ascertain if they wished to hear the remainder of the readback, and each juror declined. The trial court’s response there was upheld as "meaningful”.
*38 There are, however, no reported decisions in New York concerning a jury’s request during deliberations to have the same testimony read back a second or third time as was the case here. Where a jury has heard the entire testimony of witnesses read back, must a court accede to the jury’s request to have it read back over and over again? Surely the discretion vested in a Trial Judge by statute to fashion a proper response to a jury note includes the power to deny repetitious read-backs, at least in some circumstances. This court cannot find any authority in this or any other jurisdiction for the proposition that a Trial Judge must, in all cases, have testimony read back to a jury as many times as it asks for it.
The United States Court of Appeals for the Second Circuit has recognized "that whether requested testimony should or should not be read back to a jury during its deliberations is a matter confided to a trial court’s broad discretion in the conduct of a trial before it”. (United States v Arboleda, 20 F3d 58, 61 [2d Cir 1994].) "In making the determination, the trial court, in its discretion, may take into account factors such as whether reading certain testimony back will unduly call attention to it * * * whether giving the readback will unduly delay the proceeding * * * and the difficulty involved in giving a readback” (United States v Damsky, 740 F2d 134, 138 [2d Cir 1984], cert denied 469 US 918 [1984]).
The broad discretion afforded the trial court in responding to readback notes is also recognized by other State courts. (See, e.g., Robison v State, 888 SW2d 473 [Tex 1994]; People v Carr, 53 Ill; App 3d 492, 10 111 Dec 642, 368 NE2d 128 [1977].) In evaluating a proper response for requests of repeated read-backs of the same testimony during jury deliberations, several factors seem particularly relevant. The length of the requested readback is clearly a factor which must be considered. How recently the testimony was previously read back to the jury is another factor the court must take into account. The specificity of the readback request, the number of times the testimony has already been read back, and the amount of time the jury has had to digest and discuss the readback also appear to be relevant considerations. Finally, of course, the court must consider the positions of counsel prior to responding to any jury note.
Here the jurors requested and received readback of the entire testimony of the prosecution’s three main witnesses, Derrick Hill, Richard King, and Lisa Todd. The readback lasted over three hours. With very little deliberation time between notes, *39 the jury then requested to have read back substantial portions of the testimony of Derrick Hill and Richard King again. With virtually no deliberation time elapsing after that readback, the jury sent out a note that it was deadlocked. Following an Allen charge, the jury, a few minutes later, again requested read-back of most of Richard King’s and Lisa Todd’s testimony, as well as that of a defense witness, Brenda Andrews.
The record of these notes establishes that: (1) the jury had heard the entire testimony of both Richard King and Lisa Todd read back at the end of the first day of deliberations; (2) the jury had heard most of Richard King’s testimony reread shortly after the jurors arrived in the courthouse on the second day of deliberations; (3) the readbacks of the testimony of King and Todd requested in the last readback note would have lasted more than an hour; (4) the jurors had spent the vast majority of their time in the continuous listening to readbacks and had spent very little time deliberating in the jury room when they sent out their deadlock note; and (5) the sole defense objection to the court’s refusal to have the last readback of the testimony of King and Todd was predicated upon the "guess” that the jury was "now using Todd’s testimony with respect to the prior testimony and Mr. King’s together”, an opportunity the jury had already taken advantage of when the testimony of these two witnesses was read earlier one after the other.
Taking into account all of the above factors, the court’s responses to the jury’s notes was "meaningful”. A Trial Judge has an obligation, during jury deliberations, to both provide meaningful responses to jurors’ inquiries and to get a jury to engage in meaningful deliberations. Following the court’s partial readback, the jury then deliberated more than two hours and reached a verdict. That the court authorized a read-back of a defense witness but not repetitious readbacks of two prosecution witnesses some two hours earlier is not the reason the defendant was convicted.