**UNITED STATES of America,**
**Appellee–Cross–Appellant,**

v.

**Esteban GONZALEZ and Alfredo Colon,**
**Defendants–Appellants–Cross–**
**Appellees.**

**Nos. 482, 1027 and 306, Dockets**
**95–1438(L), 96–1032(CON)**
**and 96–1123(XAP).**

United States Court of Appeals,
Second Circuit.

Argued Nov. 25, 1996.

Decided April 4, 1997.

As Corrected April 14, 1997.

---

Pat V. Stiso, New York City (Marcia G. Shein, Atlanta, GA, of counsel), for Defendant Appellant–Cross–Appellee Esteban Gonzalez.

Roger J. Schwarz, New York City, for Defendant Appellant–Cross–Appellee Alfredo Colon.

Richard D. Owens, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, of counsel, Guy Petrillo, Assistant United States Attorney), for Appellee–Cross–Appellant.

Before: CARDAMONE, WALKER, Circuit Judges, and RESTANI, International Trade Judge. *

WALKER, Circuit Judge:

Esteban Gonzalez ("Gonzalez") and Alfredo Colon ("Colon") were convicted in the United States District Court for the Southern District of New York (Whitman Knapp, *District Judge* ) on November 1, 1994, following a jury trial, of possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Gonzalez was subject to the enhanced penalty provisions of 18 U.S.C. § 924(e) because of his prior record and was sentenced to 180 months imprisonment and a five-year term of supervised release. Colon was sentenced to 92 months imprisonment, to be followed by three years of supervised release. Both defendants now appeal the judgment of conviction principally on the grounds that: (1) the evidence was insufficient to sustain their convictions; (2) evidence pertaining to an attempted burglary that occurred in close physical proximity to and immediately preceding the defendants' apprehension was improperly admitted; (3) statements made by two police officers were improperly withheld from defense counsel in violation of the government's obligations both under the Jencks Act, 18 U.S.C. § 3500 *et seq.,* and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (4) the jury instructions with respect to the effect of stipulations on the jury's determination of each element of the crime were erroneous. The government, in a cross-appeal, contends that the district court erred in its sentencing of Gonzalez by downwardly departing without providing any permissible reason for doing so. For the foregoing reasons, we affirm the judgment of conviction entered against both defendants, and we vacate Gonzalez's sentence and remand for his resentencing.

## BACKGROUND

Late in the evening of February 24, 1994, off-duty New York City police officer Thomas Crowe ("Crowe") left his apartment in the Bronx to pick up dinner. As he walked to his car, he noticed three men sitting in a white Chevrolet Corsica parked across the street. The three were, it later turned out, appellant Alfredo Colon ("Colon"), appellant Esteban Gonzalez ("Gonzalez"), and Esteban's brother, Emilio Gonzalez.

When Crowe drove back from the restaurant a short time later, Colon, whom Crowe recognized as one of the men he had seen earlier, was walking alone down the street in the vicinity of Crowe's apartment. Seated in his car, Crowe observed Colon approach the door of Crowe's apartment building and then shrug his shoulders, as though lost or mistaken about the address. Then, as Crowe walked toward his own apartment, he saw Colon walk down one side of the street to the end of the block, cross the street, and walk up the other side.

His suspicions aroused, Crowe decided to monitor Colon's activities from just inside the doorway to his building. Crowe next saw the same white Corsica he had seen earlier slowly moving up his street, followed by a red Chevrolet Baretta. The lights were off on

---

* The Honorable Jane A. Restani, International Trade Judge for the United States Court of International Trade, sitting by designation.

both cars. The cars pulled up to where Colon was standing under a street light across from Crowe's apartment. Emilio and Esteban Gonzalez got out of the two cars and all three men had an animated conversation that appeared to Crowe as though they were discussing directions. After several minutes of this discussion, Esteban and Emilio Gonzalez drove the two cars away, once again with their headlights off.

Believing that the three were planning to steal a car, Crowe retrieved his off-duty revolver and a cordless telephone from his apartment, and returned to his post at the doorway. He next saw Colon, still pacing up and down the street, joined by Esteban Gonzalez, who was now on foot. Crowe then watched the two men crouch behind a fence and appear to concentrate their attention on some nearby houses.

Crowe dialed 911. When he found himself unable to get through, he handed the phone to his girlfriend, Susan Woelfle, and asked her to place the call. As she did so, Crowe left the apartment building to confront Colon and Gonzalez. By now the two men had retreated from the fence, and were crouching behind a car. As Crowe approached the sidewalk in front of his house, he saw both Gonzalez and Colon draw guns and begin to run in Crowe's direction—the whole time looking over their shoulders in the direction they had been facing while earlier crouching by the fence. As the two men ran towards him, Crowe identified himself as a police officer and directed them to stop.

They did not stop. Instead, Gonzalez fired a shot at Crowe. Crowe returned fire, and then sought cover behind a parked car. Crowe then saw the two toss their weapons over a nearby hedge and run down the street, away from Crowe. Crowe gave chase and managed to apprehend Colon after a brief struggle.

At about this time, police officers Jeffrey Sapienza ("Sapienza") and Valerie Parks ("Parks"), who were in the neighborhood investigating a burglary attempt, arrived at the scene in a marked patrol car. Sapienza took custody of Colon while Crowe retrieved one of the weapons discarded by the defendants.

Crowe also gave the officers a description of Esteban and Emilio Gonzalez.

A short while later, another police officer, William Coakley, after hearing a description of the white Corsica over the police radio, spotted a car fitting that description, pulled it over, and arrested its driver, Emilio Gonzalez. Some thirty minutes later, police officer Ralph Argiento located the red Baretta, pulled it over and detained its driver, Esteban Gonzalez, until Crowe arrived and identified him as the man who had fired a shot at him.

Later that evening, after securing the crime scene, a police officer found a second gun in the bushes near the spot where Crowe reported seeing Colon and Gonzalez discarding their weapons. No evidence of spent shell casings or ballistic damage was found.

Both Alfredo Colon and Esteban Gonzalez were subsequently indicted, convicted after a seven-day jury trial, and sentenced as described earlier. This appeal followed.

## DISCUSSION

### I. *The Sufficiency of the Evidence*

■ At the conclusion of the government's case-in-chief, defendants moved pursuant to Fed.R.Crim.P. 29 for a judgment of acquittal on the ground that the evidence was insufficient to sustain a guilty verdict. On appeal, defendants renew this argument.

A defendant challenging the sufficiency of the evidence underlying his conviction "bears a very heavy burden." *United States v. Soto*, 47 F.3d 546, 549 (2d Cir.1995) (internal quotation marks omitted). We will find evidence to be legally insufficient to sustain a conviction only where, viewing the evidence in the light most favorable to the government and construing all inferences in its favor, no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *United States v. Amiel*, 95 F.3d 135, 141–42 (2d Cir.1996).

Defendants' contention that the evidence against them was insufficient is based on the absence of any physical evidence to corroborate Crowe's testimony. For example, defendants argue that although Crowe testified

that he and the defendants exchanged gunfire, no bullet casings were ever found, nor was any damage to property ever detected. In addition, neither defendant's fingerprints were found on the guns recovered. These and other defects in proof are particularly significant, defendants argue, given the unreliability of Crowe's testimony at trial. We easily dispose of these arguments.

It is well settled that where, as here, the government's case is based primarily on eyewitness testimony describing criminal activity, "any lack of corroboration goes only to the weight of the evidence, not to its sufficiency. The weight is a matter for argument to the jury, not a ground for reversal on appeal." *United States v. Roman,* 870 F.2d 65, 71 (2d Cir.1989). The jury was fully apprised by defense counsel of the absence of corroborating physical evidence in support of the defense theory of the case—namely, that Crowe planted weapons and otherwise fabricated much of the incident in order to justify the improper discharge of his own weapon. The jury plainly rejected this theory, and thus was entitled, if it so chose, to rest its verdict solely on Crowe's testimony.

In passing, we note the government's explanation for the absence of physical corroboration. There was testimony to show that snow, extreme cold, and the presence of pedestrian traffic impeded the search for evidence and, in addition, that searches for spent shell casings at crime scenes are only rarely successful. There was also testimony that the chances of finding fingerprints on the found weapons were remote. The jury quite reasonably could have favored these explanations over defendants' more sinister theory that, for example, had Crowe planting guns in the bushes near his house in full view of other officers who had arrived at the crime scene.

We easily conclude that the evidence against both defendants was sufficient to support the jury's verdict.

## II. *Evidence of the Thwarted Burglary*

Prior to trial, the government sought an *in limine* ruling from the district court permitting the government to introduce the testimony of George Mascia describing a break-in and burglary attempt at his home, located around the corner from Crowe's residence, at about the time of Crowe's confrontation with the defendants.

The district judge granted the government's motion but limited the scope of Mascia's testimony. Mascia was permitted to testify that he heard his alarm go off, saw a person climbing out of a window of his house, and was later unable to identify any of the defendants as the intruder. Following the verdict, both defendants claimed that the district court's error in allowing Mascia to testify warranted a new trial.

Defendants argue that the evidence of the attempted burglary was irrelevant under Fed.R.Evid. 401; unfairly prejudicial under Fed.R.Evid. 403; and improperly admitted extrinsic evidence of a prior bad act, in violation of Fed.R.Evid. 404(b). Defendants also argue that the error of admitting this evidence necessitates a new trial because of the likelihood that it unfairly prejudiced the jury by "rous[ing] the jury's hostility toward the defendants." *See* Br. for Appellant Esteban Gonzalez at 44. These arguments are without merit.

To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime. As we have said:

> [T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.

*United States v. Coonan,* 938 F.2d 1553, 1561 (2d Cir.1991) (quoting *United States v. Daly,* 842 F.2d 1380, 1388 (2d Cir.1988)); *cf. United States v. Inserra,* 34 F.3d 83, 89 (2d Cir.1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by

demonstrating the context of certain events relevant to the charged offense").

The burglary evidence in this case was relevant both to a possible motive for the defendants' possession of firearms and to provide crucial background evidence that gave coherence to the basic sequence of events that occurred on the night of February 24. Mascia's testimony tended to add meaning to defendants' activities because it tended to show that Gonzalez and Colon were functioning as armed look-outs while Emilio Gonzalez robbed Mascia's house. This theory explained defendants' patrolling activities and other behavior, including their animated discussions, their furtive crouching and apparent monitoring of goings-on on a nearby block. And significantly, evidence of a failed burglary offered an explanation as to why Colon and Gonzalez would have been running down the street toward Crowe, with guns drawn, while looking over their shoulders in the direction of Mascia's home. Based on the testimony of Mascia and Sapienza, the government was able to argue that the time of defendants' flight from the vicinity of Mascia's home corresponded to the time that Sapienza's patrol car arrived at Mascia's home to investigate the break-in.

The district judge acted within his discretion by admitting Mascia's testimony to explain defendants' conduct once it was established that there was some basis for believing that defendants had been involved in the burglary. Such a basis plainly existed: the events about which Mascia would testify (as proffered by the prosecutor outside of the jury's presence) were sufficiently corroborated by Crowe's testimony concerning his observations of Colon and Gonzalez and by the testimony of Sapienza. Accordingly, we find that the evidence of the nearby burglary was admissible as having the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable ... than it would be without the evidence." Fed.R.Evid. 401.

We also reject defendants' Rule 403 claim because we do not believe that the district court acted arbitrarily or irrationally in concluding that the probative value of the evidence of the burglary was not substantially outweighed by a danger of unfair prejudice to defendants. See Fed.R.Evid. 403; see also United States v. Thai, 29 F.3d 785, 813 (2d Cir.1994); United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir.1992) (Rule 403 not violated where evidence that defendant committed double murder admitted to establish possession of a firearm).

■ Finally, we reject defendants 404(b) claim. It is well established that "evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R.Evid. 404(b) if it 'arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'" United States v. Towne, 870 F.2d 880, 886 (2d Cir.1989) (quoting United States v. Weeks, 716 F.2d 830, 832 (11th Cir.1983)).

## III. Disclosure Violations

Defendants argue that the government violated its disclosure obligations both under the Jencks Act, 18 U.S.C. § 3500 et seq. (requiring disclosure of statements of a government witness), and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (requiring disclosure of exculpatory evidence), in the following manner.

Several hours after defendants were arrested, early in the morning on February 25, 1994, a routine police hearing was conducted to determine whether Crowe had been justified in firing his weapon off-duty. Crowe testified at the hearing, as did Sapienza and Parks, the first officers to arrive on the scene. Before trial, defendants requested copies of the tape recordings of the hearing. The prosecutor turned over one tape marked "Board Hearing" in the stated belief that this tape was the only tape of the hearing. It turned out, however, that the tape contained only Crowe's testimony and thus the hearing testimony of Sapienza, who later testified at defendants' trial and Parks, who did not, was never disclosed.

Although the record is somewhat unclear, the missing hearing testimony apparently came to light following the jury's request

during deliberation for a play-back of Crowe's hearing testimony. Defense counsel apparently realized at that time that they had not been provided with the testimony of the other two officers. Following the verdict, defendants claimed that they were entitled to a new trial because the undisclosed tape constituted Jencks Act and *Brady* material that would have supported defendants' theory of the case by casting further doubt on Crowe's credibility. The district court rejected this argument.

We note initially that "[b]ecause motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict; that is, newly discovered evidence must be of a sort that could, if believed, change the verdict." *United States v. Gambino,* 59 F.3d 353, 364 (2d Cir.1995). This standard has been held to counsel in favor of granting a new trial motion only where the new evidence "would probably lead to an acquittal." *United States v. Gilbert,* 668 F.2d 94, 96 (2d Cir.1981). Moreover, "the trial court's rulings are given great deference on these issues because it presided over the trial and is better able to determine the effect the new materials would have had." *United States v. Petrillo,* 821 F.2d 85, 88 (2d Cir.1987).

Defendants' Jencks Act claim applies only to Sapienza's testimony, which was not turned over to the defense prior to Sapienza's testimony at trial. *See* 18 U.S.C. § 3500(b). The government concedes that its failure to provide defendants with Sapienza's hearing testimony was a Jencks Act violation, but argues that its error was harmless. We agree.

At the outset, we reject defendants' suggestion that the government's omission was deliberate, evidenced by its failure on direct examination to question Sapienza about his hearing testimony—presumably because any such questioning would reveal that the government had access to the "secret" Sapienza tape. The government's conduct was entirely consistent with its own explanation that, like defendants, the prosecutor (who had only recently been assigned to the case) was unaware of the tape's existence. Defendants' deliberate concealment theory is further undercut by the fact that the government turned over to the defense Sapienza's daily logbook that indicated his presence at the hearing.

Where, as here, the government's Jencks Act violation is inadvertent, the defendant must establish that there is a significant chance that the added item would instill a reasonable doubt in a reasonable juror. Put another way, the failure to disclose may be disregarded if there is no reasonable probability that had the evidence been disclosed, the result would have been different. *See United States v. Nicolapolous,* 30 F.3d 381, 383–384 (2d Cir.1994). If the Sapienza hearing testimony had been disclosed in a timely fashion, we do not believe that the result would likely have been different. There was no material inconsistency between Sapienza's testimony at the hearing and the trial testimony of Sapienza or Crowe. Other than broadly asserting that Sapienza's hearing testimony was material, defendants point to no particular piece of that testimony that would have helped them either by way of exculpation or impeachment. Defendants do devote considerable energy to pointing to differences between Crowe's testimony at the hearing and his testimony at trial; however, the record is clear that the defendants had Crowe's hearing testimony when he testified at trial and indeed were able to put it to good use in bringing out inconsistencies on cross-examination.

We also reject the defendants' *Brady* claim. A new trial is warranted for a *Brady* violation only where the defendant can establish that the government failed to disclose favorable evidence, including favorable impeachment evidence, *see Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), and that the evidence was material. *See Amiel,* 95 F.3d at 144. Evidence is material only if there is a reasonable probability that had the evidence been disclosed, the result would have been different. *See United States v. Payne,* 63 F.3d 1200, 1209 (2d·Cir.1995). "A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence

in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381–82, 87 L.Ed.2d 481 (1985)).

■ As an initial matter, we note that it is questionable whether Sapienza's hearing testimony was "suppressed" as *Brady* and its progeny define that term. "[E]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence." *Payne*, 63 F.3d at 1208 (internal quotation marks omitted). Prior to Sapienza's testimony at trial, the government provided defendants with a copy of Sapienza's notebook that revealed his attendance at the hearing. Defendants were thus "on notice" that Sapienza was present at the hearing—from which the fact that he was called there to testify would have been a logical inference. *See, e.g., United States v. LeRoy*, 687 F.2d 610, 618–19 (2d Cir.1982) (finding defendant was "on notice" that certain of defendant's employees may have provided possible exculpatory testimony to grand jury where defendant was aware that similarly situated employee had in fact testified before grand jury).

■ We need not decide whether or not the evidence was suppressed, however, because we believe, in any event, that the evidence was not material. *See Gambino*, 59 F.3d at 366 (where evidence not material, court need not address whether or not evidence was suppressed). The testimony of Sapienza and Parks at the hearing was fully consistent with the testimony of Crowe and Sapienza at trial and thus was devoid of exculpation or impeachment value.

Defendants make much of the fact that Parks testified at the hearing that she did not hear any gunshots as she drove up to the crime scene. This testimony would not have taken defendants very far. The fact that Parks did not hear gunshots is hardly dispositive as to whether they occurred. Moreover, defendants' theory was that only Crowe fired a weapon on that night; evidence suggesting that *no* shots were fired plainly would have

undermined, rather than supported, that theory. Finally, the charge against defendants was not that they fired their weapons, but that they possessed them. Hence, Parks' testimony would not have made conviction less probable, and thus, it was not material. *See Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383–84. Because our confidence in the trial's outcome is not undermined, *see Kyles*, 514 U.S. at ——, 115 S.Ct. at 1566, we reject defendants' *Brady* claim.

## IV. *Jury Instructions*

■ At trial, defendants and the government stipulated to the predicate felony convictions necessary to a conviction under 18 U.S.C. § 922(g). In instructing the jury, the district court stated that defendants had stipulated to this element of the crime. The court also stated that during trial defendants had conceded another element of the crime—namely, that the firearms they were accused of possessing had moved "in and affect[ed] interstate commerce." *See* 18 U.S.C. § 922(g). The district court then went on:

> So, the only issue, the only issue before you is[:] has the government established beyond a reasonable doubt as to each of the defendants, considered separately and apart from the other defendant, [that the defendant] had in his possession one of these objects which has been conceded to be a handgun.

Defendants now argue that by so instructing the jury, the court effectively directed a verdict as to two elements of the crime by removing those elements from the jury's purview, and that this violated their constitutional right to have all elements of the crime decided by the jury. Because neither defendant objected to the instruction during trial, the claimed error was never presented to the district court. Thus we review it only for plain error. *See* Fed.R.Crim.P. 52(b). For the following reasons, we conclude that the instruction was not plain error.

There is no question that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." *United States v.*

*Gaudin,* ––– U.S. –––, –––, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995); *see United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) ("[A] trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict."). This right is derived from both the Sixth Amendment, which guarantees to a defendant a jury trial, and the Fifth Amendment, which requires that the government prove a defendant's guilt beyond a reasonable doubt. *See Gaudin,* ––– U.S. at –––, 115 S.Ct. at 2313; *In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 1071–72, 25 L.Ed.2d 368 (1970).

While the defendant has the right to a jury's consideration of his guilt on every element, what is the effect upon that right when the defendant and the government stipulate to the existence of the ultimate fact that comprises the element and no objection is taken to a charge to the jury that does not submit the element to the jury for determination? The Fourth Circuit in *United States v. Muse,* 83 F.3d 672, 679–80 (4th Cir.), *cert. denied,* ––– U.S. –––, 117 S.Ct. 261, 136 L.Ed.2d 186 (1996), has held that a defendant's right to have the jury find the element persists, as does the corresponding duty of the court to charge it, and that the failure to give the issue to the jury amounts to a partial directed verdict and is thus error. The Tenth Circuit in *United States v. Mason,* 85 F.3d 471, 472 (10th Cir.1996), has held that the stipulation waives the right so that the failure to charge the element is not error.

In this case, did the district court, by charging the jury that possession of the handguns in question was "the only issue" the jury needed to decide to convict defendants, direct a partial verdict for the defendant on the prior felony and interstate commerce elements of the crime and thus err? If there was error in the charge, was it waived by the stipulation and the failure to object? Does the fact of the stipulation preclude a finding of error at all? Fortunately, we need not enter this thicket because, even if we were to assume the failure to charge on the prior felony and interstate commerce ele-

ments to be error, it does not survive plain error review.

Every error has to be examined closely and in context to decide if reversal and a new trial are warranted. In this case, there was no contemporaneous objection to the judge's charge. For several critical reasons, such an objection to error at trial is normally required before an appellate court will consider reversal of a conviction based on it. First and most basically, a timely objection alerts the trial judge to the error and provides the judge with an opportunity to correct it at a time when such correction will forever eliminate the problem. Second, a contemporaneous objection rule eliminates any incentive for trial counsel to avoid taking an objection to an easily correctable error in the hopes that, based on the error, he may secure a new trial on appeal—a new trial for which he will have the advantage of a complete preview of the government's evidence and strategy. And third, a rule that generally bars appellate review of unpreserved error underscores the simple principle that it should be during trial, and not on appeal, that the outcome of the case is determined—a principle that encourages trial attorneys to be competent, thorough and well-prepared, rather than to rely on an appellate court to correct their errors at a later time.

■ Therefore, an objection not taken is an oversight by a defendant that cannot be easily overlooked. It is an impediment to proper trial administration and, when it occurs, it is a powerful indicator that the party who now complains so strenuously did not believe then there was any error or, if he did, that it was inconsequential or that bringing it to the court's attention would actually hurt his case.

■ When error is unpreserved by an objection, it will not result in a reversal unless the error is plain error under Fed. R.Crim.P. 52(b) and, even then, reversal lies within the discretion of the appellate court. In *United States v. Olano,* 507 U.S. 725, 732–34, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993), the Supreme Court held that in order for an alleged error to be noticed under Rule 52(b), that error must (1) be actual error; (2) be plain, which is synonymous with clear or

obvious under current law; and (3) affect substantial rights, which, in most cases, means that the error must have affected the outcome of the proceedings. Upon concluding that an error occurred which is plain and affects substantial rights, *Olano* directs that an appellate court exercise its discretion to correct such error only "if the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). In this case, whether or not there was error and whether or not it was plain, we easily conclude that the third *Olano* element—that the error affect defendants' substantial rights—was not met.

As we have recently explained, when considering a constitutional error's effect on a criminal defendant's rights, "[t]he first task ... is to determine if the error is 'structural error' or 'trial error.'" *Peck v. United States,* 106 F.3d 450, 454 (2d Cir.1997). Trial error is that which may be quantitatively assessed in context in order to determine whether it was harmless beyond a reasonable doubt. *See Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 1263–64, 113 L.Ed.2d 302 (1991). A structural error, in contrast, is one which amounts to a "fundamental defect[ ] in the trial mechanism," *Peck,* 106 F.3d at 454, a determination which turns on whether the error was of such gravity and had such a pervasive effect on the proceeding that such proceeding " 'cannot reliably serve its function as a vehicle for determination of guilt or innocence.'" *Fulminante,* 499 U.S. at 310, 111 S.Ct. at 1265 (citing *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986)) (listing types of structural errors). If on direct review of a preserved claim, we find structural error, we will always reverse the judgment of conviction. *See Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717–18, 123 L.Ed.2d 353 (1993). However, the question of whether reversal is always required when the error is structural and unpreserved was raised, but not decided, by *Olano,* 507 U.S. at 735, 113 S.Ct. at 1778. We have no doubt that many, if not most, structural errors will lead to reversal, wheth-er or not preserved. But we need not decide the fate of unpreserved structural error in this case because upon examination we believe that any error in the jury charge that occurred here could have only been trial error and not structural error.

■ The Supreme Court has indicated that a directed verdict against a criminal defendant as to the entire charge against the defendant is probably structural error. *See Rose,* 478 U.S. at 578, 106 S.Ct. at 3106 ("[H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury."). Applying this rule to partial directed verdicts, the Seventh Circuit has explained:

> [N]ot only does the harmless-error doctrine not apply when the error consists in directing a verdict against a criminal defendant; it also does not apply when the judge directs a partial verdict against the defendant by telling the jury that one element of the crime—such as guilty knowledge in this case—has been proved beyond a reasonable doubt, so the jury needn't worry its collective head over that one.

*United States v. Kerley,* 838 F.2d 932, 937 (7th Cir.1988) (citation omitted). However, that a partial directed verdict may be a structural error in some instances does not mean that it is necessarily so in all instances. As we have recently explained, "[w]e do not understand *Fulminante*'s list of examples of violations that have been held exempt from harmless error review to mean that any violation of the same constitutional right is a 'structural defect,' regardless whether the error is significant or trivial." *Yarborough v. Keane,* 101 F.3d 894, 897 (2d Cir.1996), *petition for cert. filed,* Mar. 10, 1997 (No. 96–8189). Rather, in order to determine whether a particular error is structural "we must look not only at the right violated, but also at the particular nature, context, and significance of the violation." *Id.*

When the asserted partial directed verdict in this case is seen in context, it is plain to us that, if error occurred, the error is not one which "transcends the criminal process." *Fulminante,* 499 U.S. at 311, 111 S.Ct. at 1265–66. This is not a case where the gov-

ernment puts on proof as to an element of the crime, contested but not rebutted by the defendant, and the judge determines that the government's evidence alone proves the element and thus takes it from the jury. *See, e.g., United States v. Mentz*, 840 F.2d 315, 320 (6th Cir.1988) (reversing conviction in federal bank robbery case where district court accepted testimony of government's experts that bank was FDIC insured and directed the jury so to find). Rather, this is a case where the parties are in full agreement about the existence of facts that completely satisfy two technical (albeit statutorily required) elements of the crime charged: defendants' prior felonies and the movement of the firearms in or affecting interstate commerce. The parties' explicit agreement and the technical, status-defining nature of the elements actually agreed-to each independently leads us to conclude that any error in taking these elements from the jury must be considered at most trial error. We do not see how, in other words, the error could be one that "affect[ed] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Fulminante*, 499 U.S. at 310, 111 S.Ct. at 1265; *see also Yarborough*, 101 F.3d at 898 n. 1 (noting that a right which would not be subject to harmless error review if seriously impinged is amenable to such review upon a "trivial violation"); *cf. California v. Roy*, — U.S. —, —, 117 S.Ct. 337, 339, 136 L.Ed.2d 266 (1996) (noting that failure to instruct a jury on an offense element is trial error, rather than structural error).

Because any error here is not structural, the answer to the question of whether it affected defendants' substantial rights is easier. *See, e.g., United States v. Wiles*, 102 F.3d 1043, 1056 (10th Cir.1996) (substantial rights necessarily affected where error held structural); *United States v. David*, 83 F.3d 638, 647 (4th Cir.1996) (same). Our focus shifts from whether the defendant was denied a right so fundamental that we must inevitably conclude that a fair trial was not

possible to whether the error, in the context in which it occurred, deprived the defendant of a fair trial. In other words, we need only consider whether defendants, who have the burden under Fed.R.Crim.P. 52(b), have made a showing of actual prejudice. *See Olano*, 507 U.S. at 734, 113 S.Ct. at 1777–78. Because defendants do not even argue, let alone establish, that the outcome in their case would have differed had the judge properly instructed the jury on the legal effect of the stipulations, it is plain to us that their substantial rights were unaffected.

■ Moreover, in our view, the district judge's elimination of the prior felony and interstate commerce elements in this case did not affect the fairness, integrity, or public reputation of judicial proceedings, and thus even if it were viewed as affecting substantial rights, we would not exercise our discretion under Rule 52(b) to correct it. *See Olano*, 507 U.S. at 733, 113 S.Ct. at 1777; *see also David*, 83 F.3d at 647 (no *per se* rule that structural error affecting substantial rights must be noticed as plain error). Indeed, we believe that a reversal on the facts of this case would itself adversely affect the fairness, integrity and public reputation of judicial proceedings since it would reward a defendant who stipulated to his prior felony to avoid prejudice before the jury; failed to object to the instruction describing the effect of the stipulation; and then argued on appeal that the instruction was improper, presumably because, as a practical matter, it deprived the jury of the opportunity to reject the stipulation. The only possible deprivation suffered by defendants here was the possibility of jury nullification on the stipulated elements. *See Mason*, 85 F.3d at 473 (describing jury nullification as the "underlying premise" behind rule requiring juries to decide stipulated-to elements). However, the possibility of nullification does not appear to be element specific; it remains as long as *any* element is left for the jury to consider.[1] Moreover, jury nullification, while it is available to a defendant, is only a power that the

---

1. Even if jury nullification is seen as element specific, it would seem unfair to the government to invite it where the prior felony element is stipulated since, in the wake of *Old Chief v. United States*, — U.S. —, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), the government must accept a defendant's offer to stipulate to the fact and cannot put in evidence of the circumstances of the prior felony that might reduce the risk of nullification.

jury has and not a "right" belonging to the defendant, much less a substantial right. We also hasten to add that there is absolutely no question but that defendants are actually guilty of § 922(g)'s convicted-felon element. *See United States v. Jones*, No. 94–5913, 1997 WL 106310, at *4 (6th Cir. Mar.12, 1997); *United States v. Cornish*, 103 F.3d 302, 306 (3d Cir.1997) (fairness and integrity of proceeding not affected where there is no doubt defendant had committed prior felonies to which he had stipulated).

For all these reasons, we conclude that the district court's instructions on the elements of the offense do not amount to plain error warranting reversal of defendants' convictions. We have carefully considered defendants' remaining arguments and find them to be without merit.

## V. *The Government's Cross–Appeal*

The government argues that the district court erred in departing downward from a Guidelines sentence range of 235 to 293 months to a sentence of only 180 months. The government asserts that the sentence was error because the district judge failed to articulate any reason for his departure, and that the only arguable basis for departure—that Gonzalez's criminal history calculation significantly overstated the seriousness of his prior criminal conduct—was explicitly rejected by the district court during the sentencing hearing.

■ The law in this circuit is clear that a district judge must state his or her reasons for a departure from the applicable Guidelines range. *United States v. Campbell*, 967 F.2d 20, 26–27 (2d Cir.1992) ("[T]he district court must make clear on the record how the court determined the magnitude of the departure."). In the present case, the district court provided no such explanation. Accordingly we must remand for the resentencing of Gonzalez. *See United States v. Tropiano*, 50 F.3d 157, 162 (2d Cir.1995) ("We will vacate a sentence and remand for resentencing if the district court fails to follow the procedures for making such a departure.").

## CONCLUSION

For the foregoing reasons, we affirm the judgment of conviction as to both defendants, and we vacate Gonzalez's sentence and remand for his resentencing.