19-3751-cr
*United States v. Abarca*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand twenty-one.

PRESENT:
> ROBERT D. SACK,
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

---

United States of America,

> *Appellee*,

> v.                                                    19-3751-cr

Armando Ernesto Abarca,

> *Defendant*,

Raul Everado Ledesma Abarca,

> *Defendant-Appellant*.

---

FOR APPELLEE:                        MONICA J. RICHARDS, Assistant United States Attorney *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY.

FOR DEFENDANT-APPELLANT:                    JILLIAN S. HARRINGTON, Law Offices of
Jillian S. Harrington, Monroe Township,
NJ.

Appeal from a judgment of conviction of the United States District Court for the Western District of New York (Wolford, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Raul Everado Ledesma Abarca appeals from a judgment of conviction, entered on October 25, 2019, by the United States District Court for the Western District of New York.   Following a jury trial that commenced on May 31, 2019 and concluded on June 12, 2019, Abarca was convicted of all three counts charged in the May 18, 2017 indictment: (1) conspiracy to possess with intent to distribute, and to distribute, five kilograms or more of cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) ("Count One"); (2) possession of five kilograms or more of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2 ("Count Two"); and (3) maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 ("Count Three").   The district court sentenced Abarca to 324 months' imprisonment on Counts One and Two, and 240 months' imprisonment on Count Three, to be served concurrently to each other, and to be followed by five years of supervised release.

On appeal, Abarca asserts three challenges, which we address in turn.   First, Abarca argues that there is insufficient evidence to support his conviction, including a failure to prove that venue was proper in the Western District of New York (the "WDNY") on each count. Second, Abarca asserts that the district court improperly permitted expert testimony by Federal

Bureau of Investigation ("FBI") Special Agent Mark Schirching.   Finally, Abarca contends that the district court erred in admitting, through hearsay exceptions, two pieces of evidence: an intercepted BlackBerry message and a message containing an image of a Western Union receipt. We assume the parties' familiarity with the underlying facts and procedural history of this case, to which we refer only as necessary to explain our decision to affirm.

## I.    Sufficiency of the Evidence

Abarca argues that there was insufficient evidence to prove that he was a member of a conspiracy that distributed narcotics in the WDNY, or that he knew or that it was reasonably foreseeable that the narcotics conspiracy in which he participated in Ohio, which defense counsel conceded was supported by evidence adduced at trial, extended to New York.   As discussed below, we conclude that the evidence was sufficient on each count to establish proper venue in the WDNY and to convict Abarca of the charged crime.

We review challenges to venue *de novo*, *United States v. Svoboda*, 347 F.3d 471, 482 (2d Cir. 2003), and apply the same *de novo* standard of review to challenges to the sufficiency of trial evidence more generally, *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019).   In so doing, we examine the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Sheehan*, 838 F.3d 109, 119 (2d Cir. 2016) (internal quotation marks omitted).

To convict Abarca on the narcotics conspiracy charged in Count One, 21 U.S.C. § 846, the government must prove: "(1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy."

3

*United States v. Barret*, 848 F.3d 524, 534 (2d Cir. 2017) (quoting *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008)).   If a conspiracy is proven, a co-conspirator may be held responsible for the substantive crimes committed by his co-conspirators so long as those offenses were "reasonably foreseeable to the defendant as a consequence of their criminal agreement."   *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) (internal quotation marks omitted).

To convict Abarca on the substantive narcotics charge in Count Two, there must be sufficient proof that Abarca knowingly or intentionally possessed with the intent to distribute, and did distribute, five kilograms or more of, as relevant here, cocaine.   21 U.S.C. §§ 841(a)(1) and (b)(1)(A).   To sustain a conviction for maintaining a premises for the purpose of manufacturing and distributing drugs under Section 856(a)(1) as charged in Count Three, "it is sufficient for the government to establish beyond a reasonable doubt that the defendant (1) used a place; (2) for the purpose of distributing or packaging controlled substances; and (3) did so knowingly."   *United States v. Facen*, 812 F.3d 280, 290 (2d Cir. 2016).

The government was also required to prove, by a preponderance of the evidence, that venue in the WDNY was proper as to each count.   *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011).   Venue is proper in the district in which the crime was committed.   U.S. Const. art. iii, § 2; U.S. Const. amend. VI; Fed. R. Crim. P. 18.   Accordingly, for Counts Two and Three, possession with intent to sell and maintenance of the premises, respectively, the place where the crime was committed is determined "from the nature of the crime alleged and the location of the act or acts constituting it."   *United States v. Cabrales*, 524 U.S. 1, 7 (1998) (internal quotation marks omitted).   However, for Count One, because the nature of the charged narcotics distribution conspiracy implicates more than one location, proper venue existed in a

4

district where an offense was "begun, continued, or completed." 18 U.S.C. § 3237(a). Nevertheless, venue must be "reasonably foreseeable to a conspirator." *United States v. Rommy*, 506 F.3d 108, 123 (2d Cir. 2007).

Construing the trial record in the light most favorable to the government, and deferring to the jury's assessment of witness credibility, *Sheehan*, 838 F.3d at 119, the evidence at trial established the following: Abarca participated in a drug trafficking conspiracy involving the distribution of large amounts of cocaine brought into the United States from Mexico. Two cooperating witnesses—Mario Gonzalez, who received deliveries of cocaine from Abarca, and Gerardo Ballardo, who sold Abarca cocaine—testified at trial as to their participation in the scheme with Abarca and others. Gonzalez testified that Abarca provided cocaine to him in Columbus, Ohio, which Gonzalez delivered to others, returning to Abarca the money he received in exchange. He also testified that he met Abarca's cousin, defendant Armando Abarca, who acted as a driver for Abarca. The other cooperating witness, Ballardo, explained that he initially received FedEx packages of smaller amounts of cocaine, which he would deliver to a person identified as "Black" in Buffalo, New York. Eventually, Ballardo decided to increase his involvement in the drug scheme, at which point he was sent twenty kilograms of cocaine hidden in a compartment of a silver Mercedes from Mexico, which he then sold to Black. A few months thereafter, Ballardo was introduced to Abarca in California through Armando Abarca, and Ballardo began to sell cocaine to Abarca in Columbus. When Ballardo received a shipment of cocaine from Mexico, he split it between Abarca in Columbus and Black in Buffalo. Ballardo testified that he met Abarca in parking lots in Columbus where Abarca would pay for and pick up the cocaine, and that Abarca was sometimes accompanied by his cousin, Armando

5

Abarca. There came a time when Ballardo asked Abarca to go to Buffalo to pick up money Black owed to Ballardo because Black had changed his phone number and Ballardo had not been able to reach him. Ballardo testified that he could not recall if Abarca actually received the money from Black, but he did recall that after Abarca was sent to Black's home, he was able to re-establish communication with Black.

Within a month of Ballardo's arrest, Francisco Abarca, another relative of Abarca, signed a lease agreement for a storage unit in Amherst, New York, which is near Buffalo in the WDNY. That same day, the government, pursuant to a wiretap, intercepted a message sent via BlackBerry Messenger outlining the cocaine distribution operation. Although the sender and receiver of the message were known only as "Lupercio" and "Felix,"[1] respectively, the message referenced kilograms of cocaine going to Ohio, Buffalo, and Tennessee, and stated that kilograms were given to "a friend with the car." Gov't App'x at 8. Further, about one month after renting the storage unit, Armando Abarca sent to Lupercio a photographed image of a Western Union receipt from a Walgreens store located within a block of the storage facility in the WDNY. Based on surveillance video, two other Western Union transactions were made at the same Walgreens store by Armando Abarca and Abarca's brother Efrain Ledesma Abarca, although not by Abarca himself.

Approximately three months after Francisco Abarca rented the storage unit, the storage facility stopped receiving payments on the unit, and its contents were sold at auction. After the auction, it was discovered that the storage unit contained a locked locker, which contained approximately forty-three kilograms of cocaine and a blue poncho with Armando Abarca's latent

---

[1] The government was unable to establish the identities of these two participants, and thus they are only known as "Lupercio" and "Felix."

6

fingerprints. The storage unit also contained a stand-alone set of plastic storage drawers and a fan, both bearing Abarca's fingerprints.

With respect to Abarca's sufficiency challenge as to venue, we conclude there was sufficient evidence for the jury to rationally conclude that the government met its burden by a preponderance of the evidence that the WDNY was a proper venue for each count. The evidence adduced at trial included the testimony of Ballardo that he asked Abarca to travel to Buffalo to meet with Black about drug money owed to him, Abarca's fingerprints found on items located inside the storage unit in the WDNY, the fingerprints of Armando Abarca found in the poncho locked within the chest containing the drugs, and surveillance footage showing that Armando Abarca was physically present in the WDNY near the storage unit at a store where the Western Union transactions were executed. Such evidence established venue not only for the conspiracy charged in Count One, but also for the substantive narcotics charge in Count Two and the charge for maintaining a drug-involved premises in Count Three, which were both based on Abarca's involvement in the possession of cocaine in the storage unit in the WDNY.

Although Abarca contends that the testimony of Ballardo connecting Abarca to Black and the WDNY is uncorroborated and therefore does not support venue, we disagree. Any lack of corroboration of witness testimony goes to its weight, not sufficiency, *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997), and Abarca has provided no reason on appeal why Ballardo's testimony, which was partially corroborated by other evidence at trial, was "incredible on its face," *United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006) (internal quotation marks omitted). We are similarly unpersuaded by Abarca's argument that his fingerprints do not establish his presence in the WDNY, nor a connection between him and the storage unit, because

7

there was no evidence adduced at trial as to when and where the prints were placed on the items. The government presented expert testimony as to the fragility of the fingerprints, which supported the government's requested inference that the prints were recently left there by Abarca, in addition to the other evidence at trial from which the jury could rationally infer his connection to the cocaine contained in that storage unit. Accordingly, we conclude that Abarca's sufficiency challenge on venue grounds fails as to each of the counts of conviction.

To the extent Abarca challenges the sufficiency of the evidence for his conviction on other grounds besides improper venue, the facts adduced at trial, including the testimony of the two cooperating witnesses, expert witness testimony on the nature and operation of drug conspiracies (discussed *infra*), and corroborating fingerprints, receipts, and messages, are sufficient evidence from which the jury could have rationally inferred that Abarca entered into a conspiracy to distribute cocaine that included the maintenance of a storage unit to house the drugs. Abarca insists that the evidence is consistent with two separate conspiracies, one in Ohio and one in New York, and that he was only involved in the former. But when reviewing a sufficiency-of-the-evidence claim, we must defer "to the jury's choice of the competing inferences that can be drawn from the evidence," *United States v. Best*, 219 F.3d 192, 200 (2d Cir. 2000) (internal quotation marks omitted), and "the Government is not required to preclude every reasonable hypothesis which is consistent with innocence," *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) (internal quotation marks omitted). In sum, when considered "in the light most favorable to the government," *Sheehan*, 838 F.3d at 119 (internal quotation marks omitted), we find that there was sufficient evidence to convict Abarca on each count.

## II. Expert Testimony

Abarca next asserts that the district court erred in permitting expert testimony by FBI Special Agent Schirching under Federal Rules of Evidence 401, 403, and 702. In particular, Abarca argues that Special Agent Schirching's testimony about how cocaine is distributed—including, *inter alia*, how it moves in large quantities to high-level dealers who divide up the kilograms into smaller amounts, how it is diluted and sold down the chain to eventually reach the user, how kilograms of cocaine are typically packaged into rectangular-shaped "bricks," how drug traffickers usually have multiple cell phones without contact lists and change them regularly, and how they use encrypted messaging services to communicate—was irrelevant, prejudicial, and not the proper subject of expert testimony.

We review a district court's "evidentiary rulings for abuse of discretion." *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009). Due to their "superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice," *United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010), "district courts enjoy broad discretion over the admission of evidence," *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001). We do not second-guess the district court unless "there is a clear showing that [it] abused its discretion or acted arbitrarily or irrationally." *United States v. Valdez*, 16 F.3d 1324, 1332 (2d Cir. 1994).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence may be excluded, however, "if its probative value is substantially outweighed by," among other risks, the danger of "unfair prejudice." Fed. R.

9

Evid. 403. An expert witness, qualified by "knowledge, skill, experience, training, or education," may testify if the presentation of "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

We conclude that the district court did not abuse its discretion in admitting the expert testimony of Special Agent Schirching. We reject Abarca's argument that the expert testimony was neither relevant nor helpful to the jury because the jury had already heard the testimony of the cooperating witnesses, Gonzalez and Ballardo. It is clear from the record that Abarca's counsel devoted significant portions of the cross-examination of both cooperating witnesses to undermining the reliability of their testimony. Expert testimony may be utilized by the government in such situations to corroborate the testimony of the cooperating witnesses. *See United States v. Cruz*, 981 F.2d 659, 663 (2d Cir. 1992) ("[T]he credibility of a fact-witness may not be bolstered by arguing that the witness's version of events is consistent with an expert's description of patterns of criminal conduct, at least where the witness's version is not attacked as improbable or ambiguous evidence of such conduct.").

We find similarly unpersuasive Abarca's assertion that Special Agent Schirching's testimony was neither relevant nor helpful because "[t]his case is not one in which jurors needed an explanation as to how drugs are smuggled into the United States or broken down for sale . . . because the only charges here related to the wholesale kilogram quantities of cocaine." Appellant's Br. at 47. As we have held, "[t]o be relevant, evidence need only tend to prove the government's case, and . . . [b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Gonzalez*, 110 F.3d at 941 (internal quotation marks

10

omitted). Here, it was well within the district court's discretion to determine that Special Agent Schirching's testimony would be relevant and helpful to the jury in understanding the practices and methods of narcotics trafficking, as "we have repeatedly upheld the use of expert testimony by government agents to describe the characteristics and operating methods of narcotics dealers." *United States v. Boissoneault*, 926 F.2d 230, 232 (2d Cir. 1991) (collecting cases).

Finally, Abarca contends that the prejudice from Special Agent Schirching's testimony substantially outweighed its probative value under Rule 403 because it "clearly mirrored the Government's version of events, and, therefore, was improper." Appellant's Br. at 50. Although an expert witness's testimony may not "impermissibly mirror[] the testimony offered by fact witnesses," the mere fact of some overlap between an expert witness's testimony and that of fact witnesses, including cooperating witnesses, "does not prohibit the expert from also testifying on [the] subject." *United States v. Amuso*, 21 F.3d 1251, 1263–64 (2d Cir. 1994). Here, Special Agent Schirching testified generally about the distribution and communication practices of narcotics traffickers. He was not involved in the investigation of Abarca, nor did he discuss the specific crimes charged or ever mention Abarca during his trial testimony. And in his testimony, he "provided brief, crisp answers to the Government's questions about several discrete topics," as opposed to "a narrative statement of a typical drug transaction that mirrored the testimony of the Government's fact-witnesses." *United States v. Tapia-Ortiz*, 23 F.3d 738, 740–41 (2d Cir. 1994). Thus, there was no impermissible mirroring of the government's fact witnesses through his testimony. In short, Abarca has failed to show that the district court abused its discretion in conducting the Rule 403 balancing as to this testimony.

Accordingly, Abarca's challenge to the admission of the expert testimony provides no basis to disturb his convictions.

## III.    Other Evidentiary Rulings

Abarca's final challenge on appeal is that the district court erred in admitting the intercepted BlackBerry message and the message containing an image of a Western Union receipt as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E) and, for the latter, also under Federal Rule of Evidence 807.   For the following reasons, we find no abuse of discretion as to those rulings.   *Mercado*, 573 F.3d at 141.

Rule 801(d)(2)(E) excludes from the definition of hearsay statements "offered against an opposing party" and "made by the party's coconspirator during and in furtherance of the conspiracy."   Accordingly, to admit a statement under this exception, the district court must find, by a preponderance of the evidence, "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy."   *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014) (internal quotation marks omitted).   "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself."   *Id.*

Abarca argues that the government failed to prove the existence of the conspiracy charged in the indictment, and that the BlackBerry message was sent in furtherance of the conspiracy.   For substantially the same reasons we discussed in connection with the sufficiency of the evidence challenge, we conclude there was more than sufficient evidence at trial to

12

demonstrate the existence of a drug trafficking conspiracy in Ohio, New York, and Tennessee involving, among others, Abarca, Armando Abarca, and Lupercio, and that the BlackBerry message sent by Lupercio discussing the trafficking operation in Ohio, Buffalo, and Tennessee, was made in furtherance of that operation. Thus, there was no abuse of discretion in the admission of the intercepted Blackberry message.

With respect to the message that included the image of the Western Union receipt, the district court ruled that "given the evidence that Armando Abarca sent the receipt to Lupercio at or around the same time that [the storage unit] was purportedly being used for drug distribution in Buffalo, for all of the reasons that I explained in connection with my decision regarding [the BlackBerry message], I do find by a preponderance of the evidence that the communication reflected in [the Western Union image] was in furtherance of the conspiracy." District Dkt. 161 at 191. In the alternative, the district court held that, because the message containing the image of the Western Union receipt might not be considered a "verbal communication" such that Rule 801(d)(2)(E) might not apply, *id.* at 192, it was also admissible under Rule 807.

Rule 807 excepts from hearsay a statement "supported by sufficient guarantees of trustworthiness" that is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," and the opposing party is given reasonable notice. Fed. R. Evid. 807. In its ruling, the district court stated that it found the communication "particularly trustworthy," that "it b[ore] on a material fact," and that it "[wa]s the most probative evidence addressing . . . the communication allegedly between Armando Abarca and Lupercio." District Dkt. 161 at 191. Further, the district court also held

13

"[i]ts admission is consistent with the rules of evidence[,]" that defendant had "adequate notice" of it, and that admitting it would "advance[] the interest of justice." *Id.*

The district court did not abuse its discretion in reaching this conclusion. The Western Union receipt is sufficiently trustworthy because it was intercepted by wiretap. *See United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021). Whether the receipt is the most probative evidence of the link between Armando Abarca and Luperico that could be obtained through reasonable efforts is a closer call. On one hand, the receipt merely reflects a payment with no description or explanation. On the other hand, as the district court pointed out, the "inherently secretive nature of conspiracies" makes it difficult to obtain evidence of communications between co-conspirators. District Dkt. 161 at 192; *see also Santos*, 541 F.3d at 70 ("[B]ecause a conspiracy by its very nature is a secretive operation, [] it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." (internal quotation marks omitted)). Nor would it have been reasonable to expect Armando Abarca or Luperico to testify to their relationship, given that Armando Abarca was a co-defendant and Luperico's identity was unknown. *Cf. Dawkins*, 999 F.3d at 791 (finding that the proffered statement was not the most probative evidence because witness testimony was available to the same effect). On balance, it was not "manifestly erroneous" for the district court to admit the Western Union receipt under Rule 807. *See Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997) ("This Court will not disturb the district court's evidentiary rulings unless they are manifestly erroneous." (internal quotation marks omitted)).[2]

---

[2] Because we affirm the district court's admission of the message containing the Western Union receipt under Rule 807, we decline to address whether it would also be properly admissible under Rule 801(d)(2)(E).

Accordingly, we conclude that the district court did not abuse its discretion in the admission of either of the challenged messages into evidence.

\*                    \*                    \*

We have considered all of Abarca's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of conviction of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

15