08-1017-cr
USA v. Mercado (Townsend)

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued:   March 17, 2009                                    Decided: July 17, 2009)

Docket No. 08-1017-cr

_____

United States of America,

*Appellee*,

− v. −

Isaiah Mercado, Darryl Winfree,

*Defendants*,

Damion Townsend,

*Defendant-Appellant*.[1]

_____

Before: CALABRESI and WESLEY, *Circuit Judges*, and DRONEY, *District Judge*.[2]

Defendant Damion Townsend appeals from his conviction entered by the United States District Court for the Southern District of New York (Keenan, *J.*).  The judgment of the District Court is affirmed.

_____

[1] We direct the Clerk of the Court to amend the official caption as noted.

[2] The Honorable Christopher F. Droney, United States District Court for the District of Connecticut, sitting by designation.

AMANDA KRAMER, Assistant United States Attorney (Michael A. Levy, *on the brief*), *for* Lev L. Dassin, Acting United States Attorney for the Southern District of New York, New York, N.Y., *for Appellee*.

ELIZABETH E. MACEDONIO, Bayside, N.Y., *for Defendant-Appellant*.

_____

CALABRESI, *Circuit Judge*:

Defendant Damion Townsend ("Defendant") appeals from his conviction for conspiracy to distribute, and possess with intent to distribute, fifty grams or more of cocaine base ("crack"), and an unspecified amount of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(C), and 846, entered by the United States District Court for the Southern District of New York (Keenan, *J.*). We assume the parties' familiarity with the facts, procedural history, and scope of the issues presented on appeal.

## I.     Sufficiency of the Evidence

Defendant argues that there was insufficient evidence to support his conviction. Specifically, Defendant contends that the Government's key witness was not credible, that there is no evidence that Defendant planned the drug transaction, and that there is insufficient evidence that Defendant was a knowing participant in any illegal conduct and rather that he was just an innocent man driving his friends around.

### A.     Standard of Review

A defendant challenging the sufficiency of the evidence underlying a criminal conviction bears a "heavy burden," because this Court "must review the evidence in the light most favorable

-2-

to the government, drawing all reasonable inferences in its favor." *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004). "Reversal is warranted only if no rational factfinder could have found the crimes charged proved beyond a reasonable doubt." *Id.* at 459-60. "In other words, a court may grant a judgment of acquittal only if the evidence that the defendant committed the crime alleged was nonexistent or . . . meager." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (internal quotation marks omitted) (omission in original).

**B.      Discussion**

In light of this highly deferential standard of review and the evidence proffered against Defendant, this ground of appeal is meritless. The record includes evidence that Defendant had a relationship with an alleged co-conspirator, Ismaiyl Jones, discussed a drug sale with co-conspirators, drove his co-conspirators around as they planned a drug sale and picked up drugs, went with Jones to pick up cocaine, and helped to turn the cocaine into crack.

Defendant argues that the case against him all depends on Jones being a credible witness and contends that Jones was not credible. To be sure, a great deal of the Government's case relies upon Jones' testimony, and because Jones was a paid informant and cooperator, one might reasonably question his credibility. But that does not warrant an acquittal on appeal. For one thing, much of Jones's testimony was corroborated by eyewitness accounts from law enforcement officers, transmissions heard by a DEA agent, physical evidence, and recordings. Moreover, it is not for us to evaluate the credibility of a witness, a task better left to the jury. *See United States v. Thompson*, 528 F.3d 110, 119 (2d Cir. 2008) (per curiam). The jury that saw Jones testify voted unanimously to convict, and we must accordingly draw all inferences, including inferences as to credibility, in favor of conviction.

Defendant also makes two slightly more specific and related points, that there is no evidence that Defendant planned the drug transaction, and that there is insufficient evidence that Defendant was a knowing participant in any illegal conduct and rather was just an innocent man driving around his friends. Neither of these arguments, however, have any merit. It is necessary that there be evidence that Defendant "knew of the existence of the scheme alleged . . . and knowingly joined and participated in it." *United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004) (internal quotation marks omitted). It is, however, in no way necessary that Defendant have planned the encounter. And there is ample evidence that Defendant's non-planning role was a knowing role. Defendant discussed drug prices, details of a drug transaction, and helped convert cocaine to crack. Defendant contends that this is not enough to support a finding of knowledge on his part. But given our precedents, that argument is unavailing. *See, e.g.*, *United States v. Nusraty*, 867 F.2d 759, 764 (2d Cir. 1989) (listing factors that distinguish innocent conduct from knowing participation in a conspiracy).

## II. Admission of Prior Bad Acts Evidence

Defendant further argues that the District Court erred by admitting evidence of prior firearms sales, in violation of Rule 404(b) and Rule 403.

### A. Standard of Review

We review evidentiary rulings for abuse of discretion. *United States v. Lombardozzi*, 491 F.3d 61, 78-79 (2d Cir. 2007) (Rule 404(b) determination); *United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1998) (per curiam) (Rule 403 determination). "To find such abuse, we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational." *United States v.*

*Paulino*, 445 F.3d 211, 217 (2d Cir. 2006) (internal quotation marks omitted). Furthermore, evidentiary rulings are subject to harmless error analysis. Fed. R. Crim. P. 52(a); *United States v. Jackson*, 301 F.3d 59, 64 (2d Cir. 2002). "An erroneous ruling on the admissibility of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *Jackson*, 301 F.3d at 65 (quoting *United States v. Rea*, 958 F.2d 1206, 1220 (2d Cir. 1992)).

**B.      Discussion**

The Federal Rules of Evidence prohibit admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The Rules, however, do permit such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. To determine whether a district court properly admitted other act evidence, we consider whether "(1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction." *United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006) (internal quotation marks omitted). In so doing, we take an "inclusionary approach." *United States v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992).

The District Court did not abuse its discretion by admitting the prior bad acts evidence. That evidence now at issue was relevant and highly probative as to knowledge and intent, both of which were disputed. It showed the development of the relationship between Defendant and Jones, "provid[ing] background for the events alleged in the indictment" and "enabl[ing] the jury

to understand the complete story of the crimes charged, or how the illegal relationship between coconspirators developed." *United States v. Reifler*, 446 F.3d 65, 91-92 (2d Cir. 2006) (internal quotation marks and citations omitted) (alterations omitted). That is especially true in a case, such as the one now before us, where the prior dealings between two conspirators show "the basis for the trust between" the co-conspirators. *United States v. Brennan*, 798 F.2d 581, 590 (2d Cir. 1986). It is also especially applicable in this case where, as Defendant strenuously argues, some of the observed conduct might be nothing more than innocent acts of a friend, and not a knowing participation in a conspiracy. Driving two friends around town might, for example, seem innocuous. *See Nusraty*, 867 F.2d at 764. Prior gun sales, however, at least suggest that Defendant was not an innocent pawn taken by surprise by the drug transaction. The evidence was also accompanied by a careful and thorough instruction limiting the evidence to relevant Rule 404 grounds. That instruction was delivered on several occasions during testimony as well as in clear jury instructions on the issue. In light of the purpose and value of the evidence, and of the limiting instructions, we find no abuse of discretion in deeming the evidence admissible under Rule 404.

Defendant further argues that even if this evidence was properly admitted under Rule 404, it should have been excluded under Rule 403. Under Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. As discussed above, the prior gun crimes were probative insofar as they established the history of the conspiracy, trust between the parties, intent, and knowledge. Indeed, they were especially probative insofar as one of the three charged counts involved possession of a firearm. The nature of Jones and Defendant's friendship was

very much at issue at trial, and now on appeal, insofar as Defendant argued, and continues to argue, that they were mere friends and Defendant's assistance in any criminal activity was done without his knowledge.

To be sure, the admission of any evidence not directly related to the charged conduct has the potential to be prejudicial. But it does not appear that prejudice here was likely to be great. Gun transactions are not especially worse or shocking than the transactions charged. And the District court gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence. *See, e.g.*, *Paulino*, 445 F.3d at 223; *United States v. Snype*, 441 F.3d 119, 129-30 (2d Cir. 2006) (noting that "the law recognizes a strong presumption that juries follow limiting instructions").

The District Court had first hand exposure to the witnesses, jury, and other evidence, giving it a "superior position to evaluate the likely impact of the evidence." *Li v. Canarozzi*, 142 F.3d 83, 88 (2d Cir. 1998). There is no good reason for us to second guess that determination in this case. Moreover, in the case before us, Defendant's arguments to the contrary notwithstanding, the evidence was very strong. We conclude, therefore, that even assuming the District Court erred, any such error was harmless.

**III.    Conclusion**

We have reviewed all of Defendant-Appellant's claims and find them meritless. Accordingly, the judgment of the District Court is AFFIRMED.

Droney, J., dissenting from Part II:

Mindful of the considerable deference accorded to a trial court's evidentiary rulings, mindful as well of this Court's "inclusionary" approach to evidence under Fed. R. Evid. 404(b), and mindful of the standard for reversal, I respectfully dissent from Part II of the opinion. The trial court did not properly apply the standard for relevancy under Rule 404(b), and erred in performing Fed. R. Evid. 403's balancing of the probative nature of the firearms evidence versus its prejudicial effect. Moreover, the trial court's cautionary instructions and charge were not clear to the jury. This was a close case, and in my view, these evidentiary rulings were not harmless error. I would reverse the judgment and remand for a new trial.

**I.      The Charges Against Townsend and the Rule 404(b) Evidence**

Townsend was tried for three offenses: conspiracy to distribute at least 50 grams of cocaine base and an unspecified amount of cocaine, possession with intent to distribute cocaine base, and possession of a firearm during and in furtherance of a drug transaction. Those charges arose from his activities on July 13, 2005. On that day, Townsend drove his close friend Ismaiyl Jones around the Co-op City area of the Bronx. Townsend was unaware at that time that Jones had been cooperating with the Bureau of Alcohol, Tobacco, Firearms and Explosives and New York City police since early 2005. Another person in Townsend's car that day was Darryl Winfree. Winfree had previously arranged the purchase of powder cocaine by Jones from an individual known as "Scrap." After driving Jones around Co-op City for a number of errands, Townsend drove Jones and Winfree to meet Scrap, and Jones purchased the cocaine. Jones then tried to convince Townsend to drive to Townsend's apartment to "cook" the powder cocaine into cocaine base. Ultimately, Jones and Townsend went to Townsend's apartment and processed the

cocaine powder into cocaine base. Townsend received no payment or drugs from Jones or Winfree for driving them around or for the use of his apartment. The two drug charges against Townsend related to the powder cocaine purchase by Jones from Scrap and the processing of the powder into cocaine base. The firearms charge alleged that Townsend had a pistol in a hidden compartment in his car on July 13.[1] The principal issue at Townsend's trial was whether he was simply present for the drug dealings involving Jones, Winfree and Scrap, or whether he joined in the drug conspiracy. Townsend was acquitted of possession with intent to sell the cocaine base and the firearms charge. The jury found him guilty of the drug conspiracy.

The Fed.R.Evid. 404(b) evidence at Townsend's trial was the following: in April 2005, Townsend had been asked by Jones – who was cooperating with the same federal and local law enforcement officers as on July 13 – to arrange for Jones to purchase a handgun. Townsend set up a meeting between Jones and Isaiah Mercado, and Jones bought a handgun from Mercado. In June 2005 – also while Jones was cooperating with law enforcement – Townsend sold a handgun to Jones. At trial, the Court permitted Jones and law enforcement officers to testify about both firearm transactions and also admitted both handguns as full exhibits.

## II. Evaluation of Relevance Under Rule 404(b)

Although the Second Circuit's "inclusionary" approach affords broad latitude to the trial court regarding the admission of prior act evidence under Rule 404(b), this approach "does not obviate the need to identify the fact or issue to which the evidence is relevant." United States v. Figueroa, 618 F.2d 934, 940 n.2 (2d Cir. 1980). There must be a clear connection between the

---

[1] Jones was wearing a concealed radio transmitter on July 13, and was surveilled by federal and local law enforcement during that day's activities.

prior act evidence and a disputed issue at trial. Without such connection, Rule 404's general prohibition against offering character evidence to show propensity to commit crimes would be violated. For example, this Court has held that when prior act evidence is offered to prove a defendant's intent or knowledge, it must be similar to the charged offense. United States v. LaFlam, 369 F.3d 153, 156 n.1 (2d Cir. 2004) (per curiam); see also United States v. Brand, 467 F.3d 179, 197 (2d Cir. 2006) (government must show "similarity or some connection" of prior act evidence to charged crime, in order to establish that the prior act is relevant to a disputed element, such as intent); United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993) (probative value of other-act evidence depends largely on whether or not there is a "close parallel" between the crime charged and the acts shown). "Rule 404(b) does not authorize the admission of any and every sort of other-act evidence," Gordon, 987 F.2d at 908; the other act must be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." Id. (citing United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987)).

One purpose for which prior act evidence has been permitted is to provide "background information" to a charged conspiracy, to explain how a criminal relationship developed. United States v. Pipola, 83 F.3d 556, 565 (2d Cir. 1996). Prior act evidence has also been permitted to help the jury understand the basis for the relationship of mutual trust between co-conspirators. See, e.g., United States v. Rosa, 11 F.3d 315 (2d Cir. 1993). In order for prior act evidence to be admissible under these theories, however, some particular aspect of the background or the relationship of mutual trust must be in issue and the proffered evidence must be particularly

relevant to that issue.[2]

None of these characteristics of admission of evidence as background or to show the basis of the relationship of trust between co-conspirators was present in this case. The charged conspiracy involving Townsend, Jones, and Winfree had no similarity to the prior gun sales involving Townsend and Jones. The gun sales did not involve Scrap or Winfree, and Townsend's role in those sales was not offered to support a theory regarding his role in the drug conspiracy: in the gun transactions, he was a broker or a seller, while in the drug transactions, he was merely a driver, and (according to the government), in doing this driving and in allowing Jones to process the cocaine in his apartment, Townsend intended to join in the illegal agreement between Winfree and Scrap to sell cocaine to Jones. More of a connection between the Rule 404(b) evidence and the crimes under consideration is required. For example, in Rosa the cooperating witness Melendez was the former leader of a drug trafficking group known as the "Organization," and he testified at trial that years before the charged drug and gun conspiracy, he and the defendant had stolen cars and engaged in narcotics transactions together. 11 F.3d at 315. The evidence was admitted under Rule 404(b) to explain why Melendez trusted Rosa and subsequently appointed him a "lieutenant" in the Organization, since Rosa's leadership role was

---

[2] The Second Circuit has held that a determination of admissibility is often most appropriately made at the conclusion of the defendant's case, and should be aimed at a specifically identified issue. Figueroa, 618 F.2d at 939. This allows the district court to determine whether the issue is actually in dispute, and to assess the probative worth of the prior act evidence against its prejudicial effect in light of the other evidence actually presented at trial. Id. The District Court recognized this approach and decided in its *in limine* ruling on the Rule 404(b) evidence that the Court would wait to determine whether the evidence should be admitted on the issue of intent, but would permit the Government to introduce the evidence in its case in chief as "background" evidence. United States v. Townsend, No. S1 06 Cr. 34 (JFK), slip op. at 12-15 (S.D.N.Y. Apr. 30, 2007) (opinion and order on motions in limine).

-11-

a particular aspect of the conspiracy that was directly in issue in the case. Id. Similarly, in Pipola, the defendant's role as a leader and planner who worked through other co-conspirators was specifically at issue since he was not physically present at the scenes of the charged robberies. 83 F.3d at 559-61. Prior armed robberies, a burglary, and other acts involving Pipola and the other co-conspirators admitted under Rule 404(b) helped show his role as the true leader of the charged conspiracy and explain his absence from the crime locations. See id. In Brand, the "similarity or some connection" requirement was satisfied by child pornography materials found on the hard drive of a computer belonging to a defendant charged with attempting to engage in illicit sexual conduct with a minor because a "direct connection exists between child pornography and pedophilia . . . an 'abnormal sexual attraction to children,'" and whether the defendant intended to have sex with the minor was at issue. 467 F.3d at 197-98. In Townsend's case, the prior gun sales did not bear any relationship to the drug transaction that formed the basis for the charged conspiracy. There was no allegation that the gun sales were in any way a prelude or introduction to Townsend's role in the subsequent drug transaction, nor that Townsend forged any new or different connection to Jones, Winfree or Scrap by engaging in the gun sales. Nor was the criminal activity involved in the prior acts related in subject matter to that involved in the charged conspiracy.

The prior gun transactions were also not particularly relevant to the development of mutual trust between Jones and Townsend. That strong relationship and friendship was undisputed, and was detailed by ample evidence at trial, including Jones's testimony that he and Townsend had known each other since childhood; that Jones had lived in Townsend's apartment; that they saw each other virtually every day during the spring and summer of 2005; that Jones

was the godfather of Townsend's daughter; and that they had grown up together in Co-op City. The relationship of trust was not disputed by Townsend at trial – Townsend only disputed his intent to enter into the drug conspiracy with Winfree and Scrap during July of 2005. It is perhaps enlightening, both as to the lack of connection between the prior gun transactions and the drug conduct of July 13 and as to the strength of the government's proof, that Townsend was originally charged with the April and June gun transactions in the same indictment that charged him with the July 2005 drug conspiracy and related counts. The Government had these two gun counts dismissed before trial, but introduced them as the 404(b) evidence.[3]

**III.    Rule 403 Balancing Test**

The district court also failed to correctly apply Rule 403's balancing of the probative value of the prior act evidence against its highly prejudicial nature. First, the district court indicated that the evidence might be unfairly "prejudicial" only by being "more inflammatory than the conduct charged in the Indictment." United States v. Townsend, No. S1 06 Cr. 34 (JFK), slip op. at 15 (S.D.N.Y. April 30, 2007). The district court was correct in concluding that evidence which is more inflammatory than the conduct charged in the indictment would likely be unfairly prejudicial. However, the inflammatory effect of evidence is only one way in which it may cause unfair prejudice to a defendant. Evidence may also be unfairly prejudicial when, even though relevant to a fact in issue, it also tends so strongly to show the defendant's propensity to commit crimes that this tendency outweighs any probative value that the evidence might have.

---

[3]    Although Townsend was also charged with possession of a gun during the events of July 13, the district court did not consider the potential relevance, *vel non*, of the prior gun sale evidence to this charge, nor did the district court instruct the jury that the prior acts should be considered for any purpose relating to the gun charge.

See, e.g., Old Chief v. United States, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. . . . 'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, *though not necessarily*, an emotional one.") (emphasis added); Figueroa, 618 F.2d at 943 ("Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence. The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." (internal citations omitted, emphasis added)); 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:13 (3d ed. 2008) (describing unfair prejudice as either emotion-based or based on misuse of evidence).

When relevant evidence has a prejudicial effect, "Rule 403 requires the trial court to make a conscientious assessment of whether the probative value of the evidence on a disputed issue in the case is substantially outweighed by the prejudicial tendency of the evidence to have some other adverse effect upon the defendant." Figueroa, 618 F.2d at 943. The district court's analysis of the potential for unfair prejudice to Townsend from the admission of the prior gun sale evidence was limited to concluding, prior to trial, that (1) the evidence of Townsend's dealings in firearms was not rendered prejudicial because it was "no more inflammatory than the conduct charged in the Indictment," and (2) the recent shootings at Virginia Tech[4] did not render

---

[4] On April 16, 2007, a gunman at Virginia Polytechnic Institute and State University in Blacksburg, Virginia killed 32 and wounded several others before killing himself. Commonwealth of Virginia, Report of the Virginia Tech Review Panel (2007), http://www.governor.virginia.gov/TempContent/techPanelReport.cfm.

the evidence of Townsend's dealings in firearms especially inflammatory. The district court also failed to consider (or to reconsider at trial) the other evidence actually offered at trial on the disputed issues in determining the probative value of the prior gun sales, such as Jones's extensive testimony about his relationship with Townsend. See Old Chief, 519 U.S. at 182-83, 183 n.7 (a district court should consider the actual available substitutes for the proffered prior act evidence when conducting the Rule 403 balancing, but the abuse of discretion standard on appeal of a Rule 403 decision is not satisfied by a mere showing of some alternative means of proof that the prosecution in its broad discretion chose not to rely upon); cf. Figueroa, 618 F.2d at 939 (determination of admissibility of prior act evidence should often be made at the conclusion of the defendant's case). Moreover, the district court admitted not only the testimony regarding those gun sales but also the guns themselves.[5] The admission of two handguns into evidence likely contributed to the substantial prejudicial effect of the testimony regarding the gun sales. The impact of the handguns as full exhibits far exceeded their very low probative value, especially since the law enforcement officers who received and retained the guns Jones purchased corroborated Jones's testimony about the gun transactions.

Finally, it seems germane to the Rule 403 inquiry that the two firearm transactions were initiated by the same government agents that instigated the drug transaction of July 13, and

---

[5] The district court admitted the guns because it concluded that they were "inextricably intertwined with the events charged." See Trial Transcript at 71; cf. United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) ("[E]vidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed.R.Evid. 404(b) if it 'arose out of the same transaction or series of transactions as the charged offense, or if it is necessary to complete the story of the crime [on] trial.'"). The guns were intertwined – but *not* with any element of the charged conspiracy; instead, they were intertwined with the uncharged prior act evidence, which was not intertwined with the charged offenses at all.

utilized the same cooperating witness, Jones. As previously stated, the Government had recruited Jones in early 2005 to try to buy guns and drugs in Co-op City. The two gun transactions involving Townsend were initiated by Jones, who had much to gain from this cooperation. It would seem that other acts (1) involving Townsend, (2) involving the sale of drugs rather than of guns, and (3) not instigated by the Government would have had more relevance to Townsend's intent to join in Jones's efforts to acquire cocaine in July 2005. In any event, it is very unusual to have Rule 404(b) evidence which was part of the same investigation as the charged offense, was originally included in the first indictment of the defendant, and then was removed by the Government through a superseding indictment, to be offered instead as "background" evidence supporting the remaining conspiracy count.

**IV.     Limiting Instructions and Jury Charge**

Even if the district court had properly admitted the prior gun sales and the guns, and even if the Rule 403 analysis had been properly conducted, the limiting instructions and jury charge were inadequate. First, the instructions were partially incorrect as to the proper scope of the jury's consideration of the prior act evidence. As discussed above, Townsend's "knowledge" of the Winfree/Jones deal was never in issue during the trial, yet knowledge is one of the issues about which the trial court twice instructed the jury: once at the beginning of Jones's testimony about the gun sales, and once before the admission of the guns into evidence. See Trial Transcript at 143-144, 400-01 (stating that "You can consider this evidence only as background to prove and to show that the defendant was acting knowingly and intentionally if he committed

-16-

the crimes with which he's charged . . . .") (emphasis added).[6] There was no dispute that Townsend was present for and knew of the agreement between Jones and Winfree and the drug purchase. The only issue was whether Townsend agreed to join their conspiracy.

Moreover, in delivering the first limiting instruction (before Jones's testimony), the district court cited the charged events as occurring during the wrong time period: "You can consider this evidence only as background to prove and to show that the defendant was acting knowingly and intentionally if he committed the crimes with which he's charged in <u>June</u>." Trial Transcript at 143-44 (emphasis added). In fact, the period of the conspiracy charged was in <u>July</u> 2005; the prior gun sales occurred in April and <u>June</u> 2005. Although normally such an oversight might have little importance, in this case it adds confusion as to which acts or agreements (*i.e.* the gun sale in June, or the drug sale in July) could form the basis for a finding of guilty as to the conspiracy charge. The lack of objection by defense counsel does not solve the problem of jury confusion created by the erroneous instruction.

---

[6] The limiting instruction given prior to Jones's testimony was as follows:

Let me explain something to the jury. The government is offering this evidence about these alleged events relating to firearms. Mr. Townsend is not charged with that criminal activity. You can consider this evidence only as background to prove and to show that the defendant was acting knowingly and intentionally if he committed the crimes with which he's charged in June. These events involving the guns cannot be used to say well, if he had something to do with those guns, he must be guilty of the crimes charged in July.

This is similar act evidence that is admitted only to show background and the relationship between Mr. Townsend and Mr. Jones. It's not admitted as proof directly of guilt in any way. And it's not admissible and it's not there to show that the defendant is a bad fellow or that he has a bad character.

Trial Transcript at 143-44. The limiting instruction was in all material aspects repeated prior to the introduction of the guns themselves. Trial Transcript at 400-01.

The district court also instructed the jury prior to deliberations that the evidence could be considered as the basis for "an inference that in doing the acts charged in the Indictment the defendant acted knowingly" and "as evidence of the background for the alleged conspiracy, if you find a conspiracy to exist, and as evidence that may explain the relationship between Jones and the defendant." Trial Transcript at 651-52 (jury charge).[7] While this instruction might have been appropriate if the "background" evidence had been properly admitted or knowledge was an issue, a correct jury instruction as to one of the proper purposes of prior act evidence cannot cure

---

[7] The relevant portion of the charge reads as follows:

The Government has offered evidence tending to show that on different occasions the defendant engaged in other conduct that may be similar in certain respects to that charged in the Indictment. Specifically, the government has introduced evidence relating to two firearm transactions between Ismaiyl Jones and the defendant prior to the events alleged in the Indictment.

In that connection, let me remind you that the defendant is not on trial here for committing the acts not charged in the Indictment. Accordingly, you may not consider this evidence of these other acts as a substitute for proof that the defendant committed the crimes charged in the Indictment. Nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. The evidence of the other acts was admitted for a much more limited purpose and you may consider it only for that limited purpose.

If you determine that the defendant commit[ted] the crimes charged in the Indictment and the other acts as well, then you may, but you need not, draw an inference that in doing the acts charged in the Indictment the defendant acted knowingly and intentionally and not because of some mistake, accident or other reasons that are innocent. You may also consider the evidence about other acts, if you accept it, as evidence of the background for the alleged conspiracy, if you find a conspiracy to exist, and as evidence that may explain the relationship between Jones and the defendant.

Evidence of other similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other acts, he must also have committed the acts charged in the Indictment.

Trial Transcript at 651-52.

the district court's error in admitting as "background" (or to show knowledge) unfairly prejudicial prior act evidence that was not relevant to any issue in dispute.

The jury must be instructed with precision as to the issues for which they may consider Rule 404(b) evidence. The district court's erroneous limiting instructions and jury charge likely confused the jury and failed to reliably ensure that evidence ostensibly admitted for a limited purpose under Rule 404(b) would be considered for that purpose alone.

**V.      Harmless Error**

The "harmless error" standard was articulated by the United States Supreme Court in Kotteakos v. United States as follows:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress .... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. 750, 764-65 (1946) (footnote omitted).

The government's case against Townsend was weak, even considering the partially recorded conversations which were considered by the jury, because considerable doubt existed as to the only issue in dispute: Townsend's intent. The prior gun sales, as well as the drug sale forming the basis of the charged conspiracy, were all instigated and arranged at the behest of the government, through Jones – none was instigated by Townsend. In fact, the evidence did not even suggest that Townsend ever attempted to acquire drugs or to profit from the drug sale. The

trial testimony showed just the opposite: Townsend simply drove his friend Jones, who did not own a car, on various errands, just as had been their practice in the past, ultimately collecting no compensation for his actions. Although several law enforcement witnesses testified to corroborate the government's account of the events of the July 2005 drug sale, only Jones's testimony and the incomplete tape recordings of their conversations had any bearing on the only issue truly in dispute: Townsend's intent to join the drug conspiracy. Jones's lengthy testimony was, accordingly, exceedingly important.

Yet Jones also was hardly a credible witness. He had an extensive criminal history which included stealing drugs and committing larcenies since he was fourteen years old. He had been convicted in 2002 of first degree robbery, second degree assault and second degree larceny; after serving a state prison sentence for those crimes, he violated his conditions of probation and fled to avoid serving additional time for that violation. He then obtained a false identification card and began selling crack cocaine. He transported heroin from New York to Ohio, and he cashed counterfeit checks. Jones only began cooperating with the government after he was again arrested in January, 2005 in Connecticut in connection with the 2002 probation violation and faced a lengthy prison term. Even after he began his cooperation in 2005, Jones violated the terms of his cooperation agreement with the government and was again arrested.

After deadlock, the jury acquitted Townsend on the two substantive counts, and returned a guilty verdict only on the conspiracy count. In light of the Government's reliance on Jones's testimony to establish Townsend's intent, the improperly admitted prior act evidence undoubtedly substantially influenced the jury's deliberations.