*United States v. Plaza*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of December, two thousand eighteen.

Present:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> GUIDO CALABRESI,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                              No. 16-4135

PABLO PLAZA AKA PAUL,

> *Defendant-Appellant*,

JANINE PLAZA PIERCE AKA JAN, EDWIN NEGRON AKA E, ANGELO CRUZ AKA KUBIAK, LANCE PLAZA PIERCE, JEFFREY DAVIS, ZAVIER VAZQUEZ, PHILLIP BARNES AKA CREAM, MATILDA DELGADO, JAMES DEAN KENDRICK AKA JD, ANGELO OCASIO,

> *Defendants*.

_____

For Appellant:                                    SCOTT M. GREEN, ESQ., Rochester, NY.

For Appellee:                                     MONICA J. RICHARDS, Assistant United
                                                  States Attorney, *for* James P. Kennedy, Jr.,
                                                  United States Attorney for the Western
                                                  District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for Western District of New York (Geraci, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Pablo Plaza appeals from a judgment of conviction entered on December 5, 2016 by the United States District Court for the Western District of New York (Geraci, *J.*). Following a six-week jury trial, Plaza was convicted of (1) participating in a narcotics conspiracy in violation of 21 U.S.C. § 846; (2) using the premises of 87 Thomas Street for the purpose of distributing a controlled substance, in violation of 21 U.S.C. § 856(a)(1); (3) possession and discharge of a firearm in furtherance of a narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1); (4) possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and (5) the murder of Francisco Santos while engaged in a drug crime, in violation of 21 U.S.C. § 848(e)(1)(A). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

*First*, Plaza argues that there is insufficient evidence supporting his murder conviction. We review challenges to the sufficiency of the evidence *de novo*, considering the totality of the evidence and drawing all inferences in the Government's favor, and will affirm if any rational jury could have found the defendant guilty beyond a reasonable doubt. *See*, *e.g.*, *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Plaza concedes that the evidence, taken in the light most

2

favorable to the prosecution, shows that, before the murder, Plaza believed Santos stole cocaine from his safe and participated in a retaliatory drive-by shooting at Santos's family's home and that Plaza and his coconspirators assaulted Santos with a boxcutter, putting him in the hospital. At trial, the Government showed that, just hours after Plaza was arrested for the boxcutter attack, Plaza's coconspirators murdered Santos to prevent Santos from testifying against Plaza for the assault with the boxcutter.

Plaza was in police custody at the time of the murder and the Government adduced no direct evidence that he instructed or encouraged any of his coconspirators to kill Santos after his arrest. However, a reasonable juror could nonetheless find, as the Government argued at trial, that the murder could be "reasonably foreseen as a necessary or natural consequence of the unlawful agreement" to which Plaza was a party. *Pinkerton v. United States*, 328 U.S. 640, 648 (1946). Plaza correctly points out that there was no evidence at trial that any member of the conspiracy had ever murdered anyone before Santos. But it was not for lack of trying. One witness testified that Plaza himself ordered the drive-by shooting of Santos's family's home, and others confirmed his participation. And just three weeks before the murder, Plaza used a boxcutter to put a four-inch long and one-inch deep gash in Santos's head. One co-conspirator, Phillip Barnes, testified that Plaza admitted to killing Santos because Plaza "wasn't going back to prison." App. at 973. A reasonable jury could infer from this evidence that Plaza intended that he or his coconspirators kill Santos even before Plaza's arrest, which predictably hastened further violence. Put simply, Santos's killing was the foreseeable and natural consequence of the agreement to kill or seriously injure Santos, which, in turn, was motivated by the theft of Plaza's

cocaine. We therefore find that there was sufficient evidence to convict Plaza of the murder of Francisco Santos under a *Pinkerton* theory of liability.

*Second*, Plaza argues that there was insufficient evidence supporting his conviction for the knowing use of 87 Thomas Street for the purpose of the distribution of a controlled substance. The evidence at trial supported a finding that 87 Thomas Street was maintained by Plaza's coconspirators Franklyn Gonzalez and his mother and sister. They and other coconspirators, including James Kendrick, Plaza's brother and the leader of the conspiracy, used 87 Thomas Street to prepare large quantities of heroin for distribution by dividing it into bundles of ten individual bags for sale on the street. Kendrick and Gonzalez then delivered the bagged heroin to Plaza and other dealers.

The Government concedes on appeal that there is no direct proof that Plaza participated in the bagging sessions at 87 Thomas Street, and indeed there was no direct evidence that anyone ever told him that heroin was prepared at 87 Thomas Street. A reasonable juror could nonetheless infer that he knew what was going on. "[T]he jury's verdict may be based on circumstantial evidence, and the Government is not required to preclude every reasonable hypothesis which is consistent with innocence." *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008).[1]

The bagging operation at 87 Thomas Street was huge. A half dozen coconspirators prepared every week for eight months several thousand dollars' worth of heroin, some of which they immediately delivered to Plaza. Numerous witnesses knew about the operation, including

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

Shannon Riddle, who worked underneath Plaza, and Zavier Vasquez, another street level dealer. Plaza was far more important than either Riddle or Vasquez. Members of the conspiracy murdered Santos to keep Plaza out of jail, and Plaza himself ordered multiple acts of violence to protect the conspiracy. Plaza kept and bagged wholesale amounts of heroin in his home, and when Kendrick was unavailable, Plaza was at least sometimes responsible for bagging heroin and collecting money from dealers for Kendrick. Moreover, Plaza knew where Gonzalez lived, as he showed up there after Gonzalez stole some of Kendrick's cocaine. Given the totality of the evidence—including the size of the operation, the number of witnesses who knew about it, Plaza's role in the conspiracy, and his demonstrated awareness that Gonzalez lived at 87 Thomas Street—a reasonable juror could conclude that there was no reasonable doubt that Plaza knew that his coconspirators used 87 Thomas Street for the principal purpose of preparing heroin for sale. We therefore find that there was sufficient evidence to convict Plaza on this count under a *Pinkerton* theory of liability.

*Fourth*, Plaza objects to the admission of testimony about the shooting of a house on Cameron Street, which he contends was unrelated to the narcotics conspiracy and partly violated the district court's instructions. Here, there was evidence that the target of the Cameron Street shooting was a rival drug dealer whom a coconspirator had previously confronted and threatened for encroaching on their territory. Another coconspirator also testified that Plaza told him that his reputation was an important piece of maintaining his position in the drug trade. A reasonable juror could therefore find that the shooting was related to the narcotics conspiracy, either because it targeted a competitor or was intended to preserve Plaza's reputation in the business. As for the alleged violation of the district court's instructions, it was accidental and appropriately addressed

5

by an immediate curative instruction. Reviewing the district court's decision for abuse of discretion, as we must, *see*, *e.g.*, *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009), we find that allowing the challenged testimony about the Cameron Street shooting was not error. *Cf. United States v. Plaza*, No. 17-327-cr, 2018 WL 5116550, at *2 (2d Cir. Oct. 22, 2018).

*Fifth*, Plaza objects to testimony from one witness about his delivery of fifteen to twenty guns to his mother's home, as there was no evidence linking those guns to the narcotics conspiracy. We need not decide if this testimony was erroneously admitted, because, even if it was, that error was harmless. The principal factors in the harmless error inquiry are "the importance of the witness's wrongly admitted testimony and the overall strength of the prosecution's case." *United States v. Dukagjini*, 326 F.3d 45, 62 (2d Cir. 2003). There was ample evidence that Plaza consistently possessed guns to protect his product throughout the twenty-year conspiracy and that he discharged guns in furtherance of the conspiracy, including by murdering a coconspirator named Jose Troche, participating in the drive-by shooting of Santos's family's home, and ordering the shooting at the house on Cameron Street.

*Sixth*, Plaza objects to testimony from another witness about seeing Plaza assault his long-term girlfriend. This testimony was similarly harmless. Plaza's girlfriend repeatedly testified that Plaza violently abused her throughout their relationship, making her fear for her life. Plaza did not object to that testimony at trial and does not challenge its admissibility on appeal. Given this firsthand account of a lifetime of violent abuse, testimony about a single instance of such abuse did not prejudice Plaza.

*Last*, Plaza argues that the district court erred by admitting three specific excerpts of a recorded conversation between two of Plaza's half-brothers and coconspirators, which he

maintains were not in furtherance of the conspiracy and so were inadmissible hearsay. *See* Fed. R. Evid. 801(d)(2)(E). Again, we need not resolve whether this evidence was properly admitted because its inclusion was harmless. The challenged portions of the recording tell the jury little that the rest of the recording does not. The speaker brags that members of the organization had never been prosecuted as a cartel or for murder and that they had significant success despite being a relatively small crew. But he admits to the existence of the narcotics conspiracy throughout the recording, even leaving a voicemail for Plaza asking him to deliver crack cocaine. And, although he does not admit to any murders, the speaker made clear in unchallenged portions of the recording that the group used guns and deadly violence to further its illegal aims. Moreover, there was overwhelming evidence that members of the conspiracy murdered at least Santos and Jose Troche.

These challenged pieces of evidence were harmless even in combination. The Government presented significant and unchallenged similar evidence, and its case was otherwise very strong on all relevant counts.

We have considered all of Plaza's contentions on appeal and have found in them no basis for reversal. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk