21-1632-cr
United States v. Pagett

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of June, two thousand twenty-two.

PRESENT:
          DENNIS JACOBS,
          RICHARD C. WESLEY,
          WILLIAM J. NARDINI,
               *Circuit Judges.*

---

UNITED STATES OF AMERICA,

               *Appellee,*

          v.                                                        No. 21-1632-cr

LARRY PAGETT, AKA BIZ, AKA BIZ LOC,
AKA MOLOTOVBIZZZ,

               *Defendant-Appellant.*

---

FOR APPELLEE:                          PATRICK HEIN (Kevin Trowel, *on the brief*),
                                       Assistant United States Attorneys, *for* Breon
                                       Peace, United States Attorney, Eastern
                                       District of New York, Brooklyn, NY

FOR DEFENDANT-APPELLANT:               RICHARD E. MISCHEL, Mischel & Horn,
                                       P.C., New York, NY

Appeal from a June 29, 2021, judgment of the United States District Court for the Eastern District of New York (William F. Kuntz, II, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On October 24, 2018, a jury convicted Larry Pagett, a leader of the Eight Trey Crips gang, of murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), for the killing of Chrispine Philip, a member of a rival gang called Folk Nation, in a social club in Brooklyn, New York. On March 8, 2019, Pagett moved for a judgment of acquittal and, alternatively, for a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. The United States District Court for the Eastern District of New York denied both motions on November 8, 2019. On June 24, 2021, the district court sentenced Pagett principally to life in prison. On appeal, Pagett argues (1) that there was insufficient evidence of a racketeering motive for his killing of Philip; (2) that the Government failed to disprove that he was justified in killing Philip; and that the district court erred when it (3) purportedly refused to give a complete jury instruction on the law of self-defense; (4) admitted certain testimonial evidence from a cooperating witness and a victim-witness; and (5) granted the Government's mid-trial application to accommodate the media's request for copies of the video recordings of Pagett's shooting, which had already been entered into evidence and shown to the jury in open court. We assume the reader's familiarity with the record.

## I. Sufficiency of the evidence

This Court "review[s] preserved claims of insufficiency of the evidence *de novo*." *United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021) (internal quotation marks omitted). "[A] defendant challenging the sufficiency of the evidence . . . at trial bears a heavy burden, as the standard of review is exceedingly deferential." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks and citations omitted). We will "sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Capers*, 20 F.4th at 113 (internal quotation marks and alterations omitted).

### A. Motive

Under 18 U.S.C. § 1959(a), the Government must prove, as relevant here, that a defendant murdered an individual in violation of state or federal law "for the purpose of . . . maintaining or increasing position in an enterprise engaged in racketeering activity." This motive element is satisfied if "the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992). The Government need not prove that "maintaining or increasing position in the RICO enterprise was the defendant's sole or principal motive." *Id.*

There was sufficient evidence that Pagett killed Philip in order to maintain or increase his position in the Eight Trey Crips. Neil Jordan, a cooperating witness, testified that (1) just before

Pagett killed Philip, Pagett told Jordan that Philip was "the OP," that is, the opposition, and that Philip "got [an Eight Trey Crips member] killed in Trinidad," Government Appendix at 90–91; (2) members of the Eight Trey Crips were expected to commit acts of violence against members of rival gang Folk Nation, like Philip, or they would get "violated" by other members of the Eight Trey Crips, *id.* at 82; (3) members of the Eight Trey Crips gained status and enhanced their reputation in the gang by committing acts of violence; and (4) murders enhanced a gang member's reputation most. Jordan's testimony was corroborated by surveillance video, Pagett's and other Eight Trey Crips members' social media posts, in which Pagett promoted violence by his gang members and in which he was celebrated for being a "Folk [Nation] Killer," and recorded telephone calls by Pagett and other members of the Eight Trey Crips in which they bragged about the shooting and discussed giving their rivals a "pass" in a previous week. Accordingly, there was sufficient evidence to support the jury's finding beyond a reasonable doubt that Pagett killed Philip "because he knew it was expected of him by reason of his membership in the" Eight Trey Crips and that the murder was "in furtherance of that membership." *United States v. White*, 7 F.4th 90, 101 (2d Cir. 2021).

### B. Justification

New York law recognizes a defense of justification, codified in New York Penal Law § 35.15, that "affirmatively permits the use of force under certain circumstances." *People v. McManus*, 496 N.E.2d 202, 204 (N.Y. 1986). Under § 35.15, a defendant's use of deadly physical force may be justified if he: (1) subjectively believed that deadly physical force was necessary to defend himself from the use or imminent use of deadly physical force, and that belief was objectively reasonable under the circumstances; (2) retreated from the encounter if he knew that he was able to do so with complete safety; and (3) was not the initial aggressor. *See* N.Y. Penal Law § 35.15; *see also Jackson v. Edwards*, 404 F.3d 612, 623 (2d Cir. 2005). By statute, the term "deadly physical force" means "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(11). Under New York law, the "'initial aggressor' is the first person who uses or threatens the imminent use of physical force in a given encounter." *People v. Brown*, 125 N.E.3d 808, 812 (N.Y. 2019). "If mere physical force is employed against a defendant, and the defendant responds by employing deadly physical force, the term initial aggressor is properly defined as the first person in the encounter to use deadly physical force." *Id.* (internal quotation marks omitted).

There was sufficient evidence for the jury to conclude beyond a reasonable doubt that Pagett was not justified in killing Philip. A surveillance video of the shooting makes abundantly clear that Pagett was the "initial aggressor" and therefore he "was not entitled to a justification charge in the first instance." *People v. Benson*, 697 N.Y.S.2d 222, 224 (N.Y. App. Div. 1999). The surveillance video shows that Pagett bumped into Philip and his companion (not the reverse); immediately after Philip walked by, Pagett pulled out a gun and repeatedly shot Philip from behind. Pagett has not identified anything in the video, or elsewhere in the record, that supports the assertion that Philip and his companion posed an "imminent threat of deadly physical force" to Pagett in the club on the night of Philip's murder. *Brown*, 125 N.E.3d at 813; *see also, e.g.*, *People v. Goetz*, 497 N.E.2d 41, 52 (N.Y. 1986).

## II. Jury instructions

On appeal, as below, Pagett argues that the district court erred by declining to include two additions to the jury charge concerning the justification defense under New York law—specifically, about third-party aggressors and the duty to retreat. As indicated above, Pagett was not entitled to a justification defense in the first place, and so any hypothetical error in those instructions would have been harmless. In any event, there was no evidence about a third-party aggressor; and given the overwhelming evidence that Pagett was the initial aggressor, there was no reason to refine the instruction about when the duty to retreat arises.

## III. The challenged testimony

Pagett argues that the district court improperly allowed testimony from co-conspirator Jordan and an eyewitness (and victim) of the shooting, Crystal Garner. "We review evidentiary rulings for abuse of discretion." *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009). Even where evidence is otherwise admissible, a district court may exclude it "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Crim. P. 403.

### A. Jordan's testimony

At trial, Jordan testified that, in summer 2015, while Pagett, Jordan, and other Eight Trey Crips gang members stood at their standard street corner in Brooklyn, a man

> ran on the block saying he just got shot at by some Blood members on Flatbush and 9th and he was asking everybody around if they had a gun. Nobody told him we had a gun. So he said he was going to go up to Hawthorne and get a gun from some Folk [Nation gang members] . . . .

Government App'x at 85. After hearing that the man intended to get a gun from Folk Nation members, Pagett "got mad and punched [the man] in the face and he fell to the floor. [Pagett] dragged him in between two cars[,] started stomping on him and telling him, you crazy for coming over here and saying that he was going to get a gun from the OPs [that is, Folk Nation]." *Id.* at 85–86. Jordan explained that the man "couldn't get up. [Pagett] was in between the cars telling him to get up and he didn't get up." *Id.* at 86. Approximately one hour later, Jordan returned to the corner and saw fire trucks and an ambulance "picking the guy up." *Id.* Jordan testified that he saw the man approximately two weeks later "coming out of the building on Clarkson . . . in a wheelchair with two casts on his legs." *Id.*[1]

The district court found that Jordan's testimony about the beating was admissible as direct

---

[1] After trial, in his second Rule 33 motion, Pagett submitted an affidavit from a man that Pagett claimed was the victim of the alleged stomping who stated that he did not in fact sustain leg injuries from his fight with Pagett. There was no evidence supporting the conclusion that the affiant was the same man to whom Jordan referred in his testimony, and indeed it was not clear that the affidavit even described the same incident. The district court correctly determined that this affidavit was an insufficient basis to find that Jordan committed perjury and properly denied the motion. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993); *United States v. Monteleone*, 257 F.3d 210, 219–20 (2d Cir. 2001).

evidence of the charged crimes because it was "highly probative of Defendant's participation in and position in the Eight Trey Crips enterprise and relevant to whether or not Defendant committed the charged murder of a rival gang member for the purpose of maintaining or increasing his position in the charged enterprise." *United States v. Pagett*, 17-cr-306-1, ECF No. 65 at 10. We agree. The man's approach to Pagett tended to prove that Pagett had access to firearms, that he had a leadership role in the Eight Trey Crips, and that he held a position of authority with respect to gang-related matters generally. The beating that followed the man's assertion that he would ask Pagett's rivals for a gun also tended to prove Pagett's membership in and leadership of the Eight Trey Crips, his and his gang's rivalry with Folk Nation, and his willingness to use violence to defend the prestige of his gang with respect to rivals. Evidence of the beating was also admissible because it provided background and context regarding the Eight Trey Crips' feud with Folk Nation, which was a motivation behind Pagett's murder of Philip. *See United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997). This probative value substantially outweighed any prejudice from the violent nature of the acts, particularly given how it paled in severity compared to the undisputed evidence that Pagett shot Philip to death. Accordingly, the district court did not abuse its discretion in admitting Jordan's testimony on this point.

### B. Garner's testimony

Garner testified at trial that she was in the club the night Pagett killed Philip. As Pagett began to shoot, Garner realized that she was hit in her arm and stomach, was "kind of in shock," and heard people "screaming and running" and "a lot of gunfire." Government App'x at 5–6. Garner described the layout inside the club and the panic when shots were fired; and she explained that she was shot in the stomach after which she saw an individual dressed in a white shirt—as the surveillance video showed that Pagett was—run past her with a gun. Her testimony, among other things, helped the jury understand what the surveillance video showed by explaining the layout of the club at the time of the shooting, identifying what the shooter was wearing, and corroborating the testimony of Jordan, whose credibility the defense put squarely at issue. *See United States v. Everett*, 825 F.2d 658, 660 (2d Cir. 1987) (holding that a permissible basis to admit evidence of "other crimes" under Federal Rule of Evidence 404(b) is to "corroborate crucial prosecution testimony" if the corroboration is "direct and the matter corroborated is significant"). We do not discern how Garner's eyewitness testimony of the charged crime could have prejudiced Pagett, in the sense of influencing the jury to find guilt on an improper basis. Accordingly, the district court did not abuse its discretion in admitting Garner's testimony.

## IV. The release of the video to the press

Lastly, Pagett argues that the district court erred by granting the Government's mid-trial application to accommodate a request from the press for copies of the video evidence of the shooting, which had already been admitted and shown to the jury. We disagree.

"[T]he public has an especially strong [common law] right of access to evidence introduced in trials." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (internal quotation marks and citations omitted). The public also has a qualified First Amendment right of access to trial exhibits because they are "derived from . . . the relevant proceedings" and are "a necessary corollary of the capacity to attend" the trial. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93

(2d Cir. 2004).

On October 17, 2018, the government informed the district court and defense counsel that members of the press had requested copies of the videos showing Pagett shooting Philip, which the court had already admitted into evidence at trial and published to the jury in open court. The court authorized the Government to release the video—after confirming that only the video footage entered into evidence would be released—explaining that evidence that is not under seal "is a matter of public record" and "anything that has been made public and has been publicly offered in evidence and received may be made available [to the press], whether it's from the prosecution or the defense." Government App'x at 233. The court added, "I assure you that the jury will be instructed, as they were at the beginning, not to pay attention to anything offered in the media, whether offered by the prosecution or the defense." *Id.* at 234.

Pagett's only argument against public release of the video evidence is premised on the unsupported speculation that jurors might have viewed the video outside the courtroom. Even assuming that it would be problematic for the jury to view evidence that was already admitted and shown to them, there is simply no factual basis for Pagett's speculation. The district court instructed the jurors not to talk to anyone about the case or use electronic devices or social media during deliberations, and this Court "presume[s] that jurors follow their instructions." *United States v. Williams*, 690 F.3d 70, 77 (2d Cir. 2012). Therefore, the release of video footage was proper and did not impinge on Pagett's constitutional right to a fair trial. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2004).

* * *

We have considered the remainder of Pagett's arguments and find them to be without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6